**CITY OF ARANSAS PASS et al. v. MINTER et al.**

No. 8520.

Court of Civil Appeals of Texas. San Antonio.

Dec. 24, 1930.

Rehearing Denied Feb. 4, 1931.

See also 21 S.W.(2d) 384.

J. G. Cook, of Sinton, and Tarlton & Lowe, of Corpus Christi, for appellants.

J. D. Todd, of Corpus Christi, for appellees.

SMITH, J.

The city hall of the city of Aransas Pass is located on a corner at the intersection of two of the principal streets of the city. The latter owns a strip of land 15 feet wide along the west side of the city hall. Byrd L. Minter and another own a 50-foot lot adjoining said strip on the west, with a hollow tile store building thereon. In other words, the 15-foot strip of vacant land lies between the city hall on the east and Minter's building and lot on the west. The city council are undertaking to construct a city fire station on the 15-foot strip, and this litigation was instituted by Minter to restrain that undertaking. Upon a hearing the district court granted an injunction for that purpose, and the city and its officials, defendants below, have prosecuted this appeal.

Prior to the transactions here involved, the city of Aransas Pass owned a certain parcel of land cornering upon the intersection of two of the principal streets in the city. The city council decided to erect a city hall upon the corner of this land and to that end entered into a contract with L. Summerall, a building contractor, to construct the building, for a consideration of $3,700, to be paid $2,500 in cash, and the conveyance to him of the west 58 feet of said land. It was further stipulated in the agreement that Summerall should reconvey to the city the east 8 feet of the land so conveyed, with the understand-

ing between the parties that this 8-foot strip and the 7 feet remaining between the city hall site and Summerall's 50 feet should remain open between the properties as a passageway and for general public purposes. This provision was made in view of Summerall's expressed intention of putting a hotel or similar improvement upon the 50-foot lot he was to receive in the transaction. Under this agreement Summerall proceeded with the construction of the city hall upon the corner. In due course the city paid him the $2,500 cash, as agreed, but by consent of the parties the contract was modified to an agreement that instead of conveying any property to Summerall the, city was given the privilege in lieu thereof of selling 50 feet of the 58-foot frontage and paying Summerall the balance of $1,200 due him on his contract, in cash. In pursuance of this substitute agreement, the city sold the west 50 feet of the whole tract to F. M. Minter and L. T. Faires for $1,200 in cash, which the city in turn paid over to Summerall in full satisfaction of his rights under said contract, which Summerall thereupon destroyed. Subsequently Minter and Faires sold the 50-foot lot, so acquired, to Byrd L. Minter and G. E. Minter, appellees herein, for a cash consideration of $1,650, and appellees thereafter constructed a one-story hollow tile building upon the 50-foot lot, placing the east wall of said building upon the east line of their lot. By this process a vacant strip 15 feet wide was left between appellees' building and the city hall. The title to the fee in this strip thus remains in the city.

Appellees now claim, in effect, that the understanding between the city and Summerall amounted to the conveyance to the latter of a surface easement over said 15-foot strip, for the purposes of ingress and egress to and from the adjoining properties, and a passageway for the public, and an obligation upon the city to forever keep said strip open for all said purposes; that this easement, amounting to a covenant, shall run forever with the title to appellees' 50-foot lot; that as the remote vendees of said property appellees have the right to enforce said covenant and to invoke the equitable powers of the courts to restrain the city from placing its fire station, a public building, upon said 15-foot strip. It is further contended by appellees that in reliance upon said covenant they constructed a business building upon their lot so that it opens upon said vacant strip, and receives its only light and ventilation from said openings, and that if the city constructs its fire station upon said strip it will have the effect of cutting off their said building from egress and ingress, and from light and ventilation, and thereby greatly impair its value and usefulness for the purposes for which it was constructed, to wit, an electric battery station. It must be said for the purposes of the deci-

sion that the evidence supports the implied finding of the trial court that the construction of the proposed fire station will in fact result in the alleged injuries to appellees' property.

We are of the opinion that the facts hereinabove set out show no cause of action for the relief prayed for by appellees and granted to them by the trial court.

■ First. There is and was no written conveyance by the city of the alleged easement. It is elemental that an easement such as that claimed by appellees constitutes such an estate in land as that contemplated in the Statute of Frauds, which prohibits the conveyance thereof except through a declaration in writing. Article 1288, R. S. 1925.

Second. It is true that appellees contend that the original contract between the city and Summerall was in writing, and embraced a stipulation that the city should convey the whole 58 feet to Summerall, who in turn should reconvey the east 8 feet to the city with a reservation of an easement thereover. No such written instrument was offered or put in evidence, however, although there was some parol proof, differing in substantial details, that such written agreement was executed. But it is conclusively shown that the parties thereto modified the contract so as to exclude therefrom any agreement for the conveyance of the land, and the contract was thereupon destroyed by Summerall as having become ineffectual through full performance of the modified obligations thereunder.

■ Third. So, whether in writing or not, the final agreement between the city and Summerall did not contemplate any conveyance of the land from the former to the latter. No conveyance of the land was made to Summerall, and none could have been required by him. It is equally certain that he did not assign or make over the contract to appellees or their vendors, nor was he ever in any position or under any obligation to do so, and they do not so claim. On the other hand, as stated, every obligation the city owed him under that contract was fully performed, without conveyance of any estate in the land to him; and certainly there was no privity of contract between him and appellees.

■ Fourth. Appellees do not claim, directly or through their immediate or remote vendors, to have or to be entitled to any written conveyance of any easement or other estate in the vacant strip in question. On the contrary, it conclusively appears that in negotiating the sale and executing the conveyance of the 50-foot tract to appellees' vendors, the city officials expressly declined to include the easement herein contended for by appellees, and purposely excluded any such conveyance or reservation from the deed, and the vendees, under whom appellees claim, accepted

the deed with full knowledge of the city's attitude and action. This circumstance, of and within itself, had the effect of cutting off appellees' claim, for it will be presumed, conclusively as a matter of law, that in accepting the deed in that form, with full knowledge of its express terms, purpose, and maximum effect, the vendees thereby waived and could not thereafter set up or enforce any prior parol agreements tending to enlarge or add to the express covenants embraced in the conveyance.

■ Fifth. Appellees claim only through or by virtue of the contract between Summerall and the city, and, as has been shown, that contract, as modified by agreement of the parties to it, did not contemplate any conveyance of any estate in any land, and no such conveyance was made. Accordingly, appellees are relegated to a contract which, at most, rests wholly in parol, with no claim that the city is or has ever been obligated to put in writing. If a parol agreement of this nature could ever operate as a conveyance of land, the alleged agreement in this case was as a matter of law and fact too vague and indefinite to constitute a binding obligation upon the city to forego its inherent right and affirmative obligation to the public to put the property involved to whatever use may best serve the public interest, which is a matter to be determined by the city governing board from time to time and administration to administration, unless and until it is permanently dedicated to a particular public use inconsistent with all other uses, and such dedication must be done under forms and solemnities essential to the validity of such acts, and at no time employed in this transaction.

We see no occasion for further extended discussion of the case. Appellees claim the easement over the city's lands by virtue: First, of the contract between the city and Summerall, which, as has been shown, did not in its final form call for or result in any sort of conveyance, written or otherwise; and, second, by virtue of alleged parol conversations and understandings participated or acquiesced in by the city officials. But as these conversations or understandings are but vaguely and loosely shown to have occurred, are not evidenced upon the minutes or records of the city council or in any other writing, and were not included in, but were purposely and expressly excluded from, any written declaration, they were wholly ineffectual as a conveyance of any estate in the strip in controversy. The result is that the city's right to put that strip to any lawful public use remains unhampered, and the court erred in restraining the city and its officials from constructing its fire station thereon.

The judgment is reversed, and the injunction dissolved.