EAGLE ROCK RANCH, INC., et al.,
Appellants,

v.

Robert W. DRYE et al., Appellees.

No. 10805.

Court of Civil Appeals of Texas.

Austin.

May 17, 1961.

Rehearing Denied June 7, 1961.

Ernest Morgan, San Marcos, Sam W. Mintz, De Lange, Hudspeth & Pitman, Houston, for Eagle Rock Ranch, Inc.

John C. Foshee, Arthur P. Bagby, Austin, for C. B. Smith.

Alvis Vandygriff, Austin, W. T. Barber, San Marcos, O'Quinn, McDaniel & Randle, Howell Finch, Austin, for Robert W. Drye and others.

Patterson, McDaniel & Moore, Houston, Mark V. Fuchs, New Braunfels, Elmer S. Browder, Houston, Terry L. Jacks, Edward M. Cape, San Marcos, for Conso Realty Co., Eagle Rock Corp. and Edward C. James.

ARCHER, Chief Justice.

This was a suit brought by appellees Robert W. Drye and eight other named persons, alleged to be a class suit, for declaratory judgment establishing alleged oral easements for pleasure and recreational purposes upon and across the Ranch property of appellants; also to modify and reform a

portion of the recorded plat and restrictions on Eagle Rock Heights, Sec. 1 (being a subdivision by appellant Eagle Rock Ranch of a portion of its Ranch property), and to establish by the judgment a private park in said subdivision, which park is alleged to have been orally dedicated to appellees Drye and the other members of said class; for injunction to restrain interference with the alleged easement rights; and, alternatively, for damages against appellees Edward C. James, Conso Realty Company and Eagle Rock Corporation for alleged loss in values of properties of appellees Drye and said eight named persons arising out of breach of alleged contractual duties. Appellants filed a cross action against appellees Drye and said eight named persons to remove cloud cast on appellants' title to the Ranch property by their assertions and claims of easements, and for damages for conspiracy and slander of title; and appellants also filed a cross action against the appellees James, Conso Realty Company and Eagle Rock Corporation to recover damages for breach of covenants, guaranties and warranties, and, alternatively for rescission and damages. Appellees James, Conso Realty Company and Eagle Rock Corporation also filed a cross action against appellees Drye and said eight named persons, in which they sought damages for alleged conspiracy, slander, and for impeding sales of property.

The case was tried before a jury and upon a verdict on special issues, the trial court rendered judgment in favor of appellees Drye, the eight other named persons, and all other owners of lots in and adjacent to the four subdivisions at the Ranch, decreeing that they have easements for pleasure and recreational purposes across the Ranch property of appellants, decreeing further that a portion of said Eagle Rock Heights, Sec. 1, is impressed with easements in their favor, for use as a park, and permanently enjoining appellant Eagle Rock Ranch and appellant C. B. Smith, from interfering with the exercise of said easement rights. The judgment further provided that appellees

Drye and the others take nothing as against appellees James, Eagle Rock Corporation and Conso Realty Company; that appellants take nothing by their cross action against appellees Drye and the other named appellees, in accordance with a verdict instructed against appellants on said cross action; that the cross action filed by appellees James, Eagle Rock Corporation and Conso Realty Company against appellees Drye and the other eight named persons be dismissed; and upon the jury's verdict on special issues, the trial court rendered judgment in favor of appellees James, Eagle Rock Corporation and Conso Realty Company and against appellants on their cross action for damages for breach of covenants and warranties; the court having theretofore instructed a verdict against appellants on their cross action against appellees James, Eagle Rock Corporation and Conso Realty Company for rescission and damages for fraudulent concealment. Only appellants, Eagle Rock Ranch, Inc. and C. B. Smith have appealed from said judgment.

The subject matter of some phases of this case has been before this court as James et al. v. Drye et al., Tex.Civ.App., 314 S.W.2d 417, affirmed 159 Tex. 321, 320 S.W.2d 319 and James et al. v. Eagle Rock Ranch et al., Tex.Civ.App., 304 S.W.2d 471 and reference is here made to the above cases.

The appeal by Eagle Rock Ranch, Inc. and by C. B. Smith is a common one, Smith adopting as his own the brief of Eagle Rock Ranch, Inc. and such appeal is based on 127 points.

Points Nos. 1 to 7 are directed to the error of the court in rendering judgment awarding recreational and pleasure easements and to all owners of lots individually and as a class because only 9 of the named appellees and only 2 of the 45 so-called "unnamed plaintiffs" attempted to prove a cause of action to establish the alleged oral easement; that no proof that any of the 45 members belonged to the class relying upon representations that they would get ease-

ments; in overruling the plea in abatement and special exceptions and in permitting the suit to be maintained as a class action, because there was no proof that the 43 persons were similarly situated and no showing of authority for the named appellees to represent the unnamed plaintiffs as members of the class and such unnamed plaintiffs should have been made parties, or their identities disclosed prior to the trial.

The judgment entered by the court was in favor of the plaintiffs naming ten, for themselves and on behalf of numerous unnamed plaintiffs, being a class, against Eagle Rock Ranch, Inc. and C. B. Smith, and that the lands are subject to and impressed with easements, conditions and uses for pleasure and recreational purposes, and that the rights are covenants running with the land (describing it as Tract One).

The court defined the term "easements" as:

"C. The term 'pleasure and recreational purposes,' as used in this judgment, means outdoor recreational uses and purposes for which the said Tract One is at this time reasonably suited or adapted such as (but without being limited to) horseback riding, camping out, picnicking, hiking, swimming, boating, fishing, nature study, and other similar uses. In using Tract One for such purposes and uses, the persons entitled to such purposes and uses also have the right of access to Tract One and the right to travel over Tract One for the enjoyment of such purposes and uses. The said pleasure and recreational uses shall run for a period of twenty-five years from July 18, 1949, until July 18, 1974, and shall be renewable in the following manner: At any time within five years before June 1, 1974, a majority of the then lot owners in the subdivisions described in Paragraph D may by written declaration signed and acknowledged by said lot owners, extend such pleasure and recreational

rights over and upon Tract One for a period of ten years additionally from and after June 1, 1974, and similarly for successive additional ten-year periods as often and as long as a majority of the then lot owners as described in Paragraph D may desire to so extend same."

The judgment made other awards, which will be noted subsequently herein, as they become applicable.

The judgment provided that plaintiffs take nothing as against Edward C. James, Eagle Rock Corporation and Conso Realty Company and dismissed the cross action of the cross plaintiffs against the cross defendants.

Points Nos. 8 through 19 are directed to the assigned errors of the court in rendering judgment awarding to appellees and all other lot owners the alleged recreational easements over the Ranch property of appellants, because there was no evidence of erty authorized anyone else to grant or eser act, express or implied, on the part of any owner of the Ranch property that would establish such easements, nor was there any evidence that any owner of the Ranch property authorized anyone else a grant or establish such easements; because the oral agreements or representations, upon which appellees rely, were made by third persons and there was no evidence of authority of any such third persons to make such alleged oral representations in behalf of any owner of the Ranch property; because the appellees were charged with notice of all recorded instruments in the office of the County Clerk of Hays County affecting the title to the Ranch property; because the evidence conclusively showed that none of of the appellees has a written conveyance or grant to an interest in the Ranch property and the oral easements are in violation of the Statute of Frauds and of the parol evidence rule, being an attempt to vary the terms of written instruments, each complete on its face, and do not comply with the pro-

visions of Article 1288, V.A.C.S., nor with the requirements of Article 1322 relating to conveyances of an interest in land by a corporation; because the alleged oral agreements relied on by appellees became merged in the contracts of purchase and in the deeds to each appellee and accepted by them, in which no reference is made to the easements sought to be established by the appellees; because there is no evidence that any owners of the Ranch property, or anyone authorized to act in their behalf, ever dedicated such property, or any part thereof, for any public purpose or for the use of appellees, or said lot owners, for any purpose; in rendering judgment awarding recreational easements to appellees and all other lot owners in and adjacent to the four subdivisions over the Ranch property, upon any theory of dedication, for the reason that there was not sufficient evidence of the alleged dedication to the alleged easements and because such dedication is contrary to the Statute of Frauds, Conveyances, Parol Evidence Rule and the Rule of Merger in Documents; and finally in instructing a verdict against appellants on their cross actions against appellees for removal of cloud cast upon the title of appellants to their Ranch property and a portion of Eagle Rock Heights, Sec. 1 by reason of the claims and assertions of easements and other rights made by appellees for the reasons heretofore made.

As we have noted, phases of this litigation has been before this Court and the Supreme Court and we will endeavor to keep this decision within reasonable bounds.

Edward C. James acquired the title to the property involved herein during the years 1947 and 1948. In 1949 James conveyed to Consolidated Venetian Blind Company, Inc. the lands less a tract of 31 acres, and another of 23.65 acres.

The Blind Company was incorporated in 1944 with Edward C. James, Evelyn James and L. L. Gerdes, as incorporators. On June 6, 1949, Edward C. James, L. L. Gerdes and Edward C. James, Jr. organized Eagle Rock Corporation, and on the same date Harry P. Wayman, Jr., Edward C. James, Jr. and L. L. Gerdes organized Eagle Rock Ranch Club, with purposes to maintain a club for the promotion and encouragement of riding, hunting, etc., without capital stock and not to be operated for profit and owning no property.

On July 1, 1949, Edward C. James made an agreement with the club leasing to it 19.4 acres of the Ranch to provide club facilities for the enjoyment of club members, together with the lodge building, etc. As part of the consideration the lessee appointed the lessor as the operator and manager of the premises, and agreed to maintain the premises for use as a club and to furnish the club members free the use of the swimming pool, fishing privileges, use of the roads, paths and landing field on the Ranch property and use of the club rooms, etc.

The lease provided that the lessor could make reasonable charges for meals, beverages, living quarters, boats, hunting equipment, riding lessons, saddle horses, etc., and that the lessor maintain and operate the facilities at his own cost and to receive all amounts collected from members for services and all dues.

The use of the premises was restricted to members of the club, their families and guests, with the privilege to refuse service to any club members who did not pay their dues.

The lease made provision for the operation of the premises and for termination under conditions and an option was granted the club to purchase all of the Ranch, including the leased premises at an agreed price. The lease agreement was amended in 1949 to permit the use of the club facilities to transient guests and to make further improvements.

On June 22, 1949, Edward C. James conveyed to Eagle Rock Corporation the 31 acre tract which had been excluded from the prior sale to Consolidated Venetian

Blind Co. Inc.  On June 22, 1949, Eagle Rock Corporation subdivided the 31 acre tract and designated it as Eagle Rock Ranchitos.

We are here inserting three plats, Nos. One, Two and Three, as illustrations, in order that there be a clearer understanding of the areas:

## ILLUSTRATION ONE

Showing Moroney, Ide, and Scudder Tracts

ILLUSTRATION TWO

Showing Ranchito Subdivisions, Club Area, 4 Small Tracts
and 9 Small Tracts

ILLUSTRATION THREE

Shewing Areas where judgment imposed "Easements" and created "Park"

"TRACT ONE" described in Judgment ("Easement" Area)

"TRACT TWO" described in Judgment ("Park" Area)

It was expressly provided in connection with the subdivision that "The streets and easements shown on the maps are for the sole and exclusive use of said Eagle Rock Corporation and the owners of lots in said subdivision. Said streets and easements are not dedicated to the public nor intended to become available for the public for any purpose."

On July 18, 1949, Edward C. James conveyed to Eagle Rock Corporation the tract of 23.65 acres excluded in the first conveyance to Consolidated Venetian Blind Co., Inc.

Eagle Rock Corporation subdivided the 23.65 acre tract, such being designated Eagle Rock Ranchitos, Section 2. In this subdivision the same provisions were made as in Section 1, as to the streets and easements.

Further restrictions on the Ranchitos, one of which was that no part should be sold or used by any person other than a member of the club, were made. Another restriction was that a charge of $5 per month per lot be made payable by the owner to a "Maintenance Fund," to be used in maintaining streets, paths, etc., collection of trash, and creating a lien.

On April 30, 1952, Edward C. James, Edward C. James, Jr., and L. L. Gerdes organized Conso Realty Co. and on May 1, 1952, Consolidated Venetian Blind Co., Inc. conveyed to Conso Realty Co. the property conveyed to grantor by James on June 12, 1949.

On February 7, 1952, Carl F. Scudder et ux. conveyed to Eagle Rock Corporation 228.42 acres of land. On June 2, 1953, Eagle Rock Corporation subdivided a tract of 98.3 acres out of the Scudder Tract, and designated such as Eagle Rock Ranchitos, Section 3, and provided that the streets and easements are for the sole use of Eagle Rock Corporation and the owners of the lots and not dedicated to the public. On June 18, 1953, restrictions were imposed on the lots providing for a monthly mainte-

nance fee of $5 and restricted the ownership and occupancy to members of the Club.

On April 29, 1953, Edward C. James et ux. conveyed to Conso Realty Co. a tract of 144.09 acres known as the L. H. Ide et ux. tract.

On March 4, 1955, the Conso Realty Co. and Eagle Rock Corporation granted C. B. Smith an option to purchase all of the unsold lots in sections Nos. 1, 2 and 3, Eagle Rock Ranchitos, and the remainder of the Ranch with certain personal property and set out the consideration aggregating $225,-000. On March 31, 1955, Smith exercised the option.

Eagle Rock Ranch was organized on April 12, 1955 with C. B. Smith and two others as the incorporators. On January 30, 1957 the corporate name was changed to Eagle Rock Ranch, Inc.

On April 13, 1955, Eagle Rock Corporation conveyed to Eagle Rock Ranch, Inc. the unsold lots in the Ranchitos, and on the same date conveyed the remainder of the Ranch property. By bill of sale all live stock, ranch equipment, hotel furniture, etc. were conveyed. There was also conveyed all of the rights under the terms of the lease executed by James to Eagle Rock Ranch Club.

On April 12, 1956, Eagle Rock Ranch, Inc. subdivided a tract and designated it as Eagle Rock Heights, Section 1.

As is noted in the statement of the case, this suit was filed June 29, 1957, and had for its purpose to establish the easements over the Ranch property and for injunction to prevent interference with the recreational easements; and in the alternative, in the event of failure to establish the easement rights, to recover damages from James et al.

The case was fully developed and there was testimony as to certain statements and representations made as to the recreational

easements given by a number of the witnesses.

All statements, agreements and representations claimed by appellees as establishing the easements alleged were made by Frank Duncan (now deceased), Carl Purnell and Mrs. Duncan. The brochures and other exhibits introduced in evidence by appellees and the testimony of the several appellees is as to what each relied upon in the purchase of his lot and in the erection of improvements thereon.

The statement of facts in this case is very long, containing approximately 5,000 pages, accompanied with many maps and exhibits. We are unable to review this record in this opinion but have read the same carefully. We have been afforded excellent briefs by the attorneys for all parties and have been greatly aided in the consideration of this cause thereby.

We do not believe that the easements and dedications such as are contended for by appellees herein can be established in the way and manner contended for by appellees.

■■■ An easement as well as a license may be created only by the owner of the land over which it is sought to be exercised, and requires some act on the part of the owner. Such easements would pass by implication in the conveyances without being specifically mentioned in the deeds. An easement to pass by implication must be open, visible and permanent and of such nature as does not require the act of man to perfect or indicate its use. The easements sought to be established in the instant case do not meet such requirements.

■■■ Such easements as claimed by appellees cannot be created by parol evidence under an alleged theory that there was a "general scheme and plan" to grant such easements to all lot owners and such would be contrary to the Statute of Frauds and Conveyances.

There is no evidence of any written authority conferring upon appellees the right to use the Ranch property as is sought by appellees.

Appellees do not claim any rights under the lease from James to the Club, or membership therein, but claim the rights independent of said lease, membership, and the licenses in writing claimed by appellees in their pleadings are alleged to exist by reason of facts therein alleged, but there are no facts alleged by appellees showing any character of written license from the owners of the Ranch property.

■■■ The alleged easements sought by appellees are not of the character as would pass by implication without being specifically in the deed. Pokorny et al. v. Yudin, Tex.Civ.App., 188 S.W.2d 185.

The purchases of lots by appellees were from Eagle Rock Corporation, and the easements sought to be established by them are over lands owned by another party (Consolidated Venetian Blind Co. and later, Conso Realty Company) with an exception that William E. Harlan who bought from appellants and Robert E. Cummings, who bought a second lot from appellants. Each appellee who testified bought his lot or lots from Eagle Rock Corporation, or from some lot owner on a resale.

There is no evidence that appellants or anyone authorized to act in their behalf represented to either Harlan or Cummings that he gets easement rights over the Ranch property with the purchase of a lot.

Appellants plead the Statute of Frauds, Statute of Conveyances, and Article 1322, V.A.C.S., as to the manner of conveyance of lands by a corporation. Appellants also plead that any alleged oral representations or agreements became merged in the deeds, the parol evidence rule, etc.

In Walker v. Hamilton, Tex.Civ.App., 42 S.W.2d 148, 149, the Court stated that the rule of merger "would preclude any recovery under the pleadings." Baker v. Baker,

Tex.Civ.App., 207 S.W.2d 244, er. ref., N.R.E.

■ The evidence does not sustain the claim that the lot purchasers would get easements or some kind of privilege to use the Ranch property, or as to the duration of such. If the rights of appellees to use the Ranch property were as club members, then such rights were subject to the terms of the club lease, or if such claims were acquired by estoppel it was essential to allege and prove that the owners of the Ranch, or someone authorized to act in behalf of the corporation, made representations that appellees would get easements over the Ranch property as lot owners, and independently of being club members.

The brochure "Bountiful Relaxation" reads in part:

"Eagle Rock Ranch members have an easement over the entire ranch. In other words, members of the club have all the pleasure rights over the entire ranch property;"

and the pamphlet "The Eagle Rock Club Plan" reads:

" * * * you, as a member, have an easement over the entire ranch. In other words, members of the club have all the pleasure rights over the entire ranch property."

The testimony in general was that lot purchasers would have "rights" or "privileges" or "use of" or "the run of" a 1,000 acre ranch. The existence of the club and the club lease and any rights as members thereof was known to the purchasers of lots.

Much of appellees' testimony concerns statements made by a Mr. Duncan, which is that "he mentioned the fact that purchasers received the right of easement or recreational use of the entire 1,000 acres" and with reference to the area between Sections 1 and 2 (found by the judgment to be a park area); that "no property in that area could be sold, that it was set aside as

a parkway" and have "free access to all of this area that we saw."

R. C. West, a witness for appellees, testified, in part:

"A. I relied upon the facts told to me by Mr. Duncan which included this right of easement or recreational rights over the entire 1000-acre ranch, relied upon the implications that the club's lease comprised the entire 1000 acres."

Joe A. Howse, a witness for appellees, testified in part, on being asked what Mr. Duncan told him:

"He told me one of the unique features of the purchase of property on Eagle Rock Ranch was that it carried with it recreational easement or privilege over approximately 1,000 acres of open country, permitting the enjoyment of hiking, fishing, riding, swimming, horseback riding, picnicking, generally those things which we were primarily interested in obtaining for our children."

and

"Mr. Duncan repeated to me in Mr. James' presence the features of the purchase of property which included the recreational easement and privilege. More specifically, hiking, fishing, swimming, horseback riding, camping, picnicking, tennis, golf, horseshow pitching, and other activities of similar nature.

\*    \*    \*    \*    \*    \*

"In the decision to purchase a ranchito site on Eagle Rock Ranch, I did rely on the oral representations of Frank Duncan made to me and my wife both in and out of the presence of Ed James."

The above statements are similar to those claimed to have been made to other of the appellees.

Easements by estoppel may be established under certain conditions as are stated in

cases cited by appellees such as: Harrison v. Boring & Kennard, 44 Tex. 255; Fort Quitman Land Co. v. Mier, Tex.Civ.App., 211 S.W.2d 340, er. ref., N.R.E.; 15–B Tex.Jur. 280–282, Sec. 23.

Appellees have not brought themselves within the rule as announced in the above cases and other cases cited. None of the cases involved "pleasure" or "recreational" easements.

In City of Aransas Pass v. Minter, Tex. Civ.App., 34 S.W.2d 1113, er. ref., the Court discussed easements in which no written conveyance was relied on.

"Servitudes or easements must be created by the owner." Harrison v. Boring & Kennard, supra.

In Callan v. Walters, Tex.Civ.App., 190 S.W. 829, 830, no writ history, the general rule was stated as follows:

"That an easement over land is such an interest in the land as to require in its conveyance the same formality as is necessary for the conveyance of the fee is too well settled for discussion." Brown v. Woods, Tex.Civ.App., 300 S.W.2d 364.

There was no evidence that the owners of the Ranch property received any part of the consideration paid for a particular lot.

■ A real estate broker is a special agent with authority limited to showing the property and finding a buyer, and has no implied authority to make representations with respect to the quality of the property sold. Loma Vista Development Co. v. Johnson et ux., Tex.Com.App., 142 Tex. 686, 180 S.W.2d 922, opinion adopted by Supreme Court.

■ The Ranch property was at all times owned from June 12, 1949 successively by Consolidated Venetian Blind Co., Inc., Conso Realty Company and by appellants, and the purchasers of lots were charged with notice by the Deed Records of Hays County, and appellees cannot claim any character

of estoppel as against the three corporations who owned the Ranch property because of alleged representations and the jury finding that Edward C. James caused or permitted such to be made.

In Rogers v. Hussion, Tex.Civ.App., 273 S.W. 969, 973, writ dism., the Court held that:

"We cannot escape the conclusion that appellees were charged with notice furnished by the deed records, and they have cited no authority contrary to these views. * * * even if the verbal agreement between Rogers and appellees was made as claimed by them, and, as the judgment of the trial court implies, was a fact, nevertheless the record showing without contradiction that the property over which the easement is claimed by appellees was the separate property of appellant at the time they expended their first dollar upon it, and this fact was made known to them by the deed records of Harris county, they could not claim an equitable estoppel as against appellant. * * *"

It is undisputed that Eagle Rock Ranchitos, Section 1, comprised 31 acres, and was owned by Eagle Rock Corporation, which did not own any property shown on the map outside the 31 acres; that the 19.4 acre Club area was owned by Consolidated Venetian Blind Company had been leased to the Club and was not a subdivided area.

■ We believe that the showing of the recreational areas on the map was for the purpose of description and reference, and was not intended to be dedicated to appellees or anyone else and did not constitute a dedication of the areas to anyone. City of Elsa v. Weaver, Tex.Civ.App., 304 S.W. 2d 212, no writ history.

In 14–B Tex.Jur. (Dedication) 338, Sec. 2, the author states as follows:

"Dedication has been defined as the act of setting apart land for a public

use. * * * It involves an appropriation of land to some public use, made by the owner, and actual or implied, accepted for such use by or on behalf of the public." 14–B Tex.Jur. 348, Sec. 14; 14–B Tex.Jur. 350, 351, Sec. 16; 14–B Tex.Jur. 365–366, Sec. 24.

In City of San Antonio v. Grandjean, 91 Tex. 430, 41 S.W. 477, the court sets out the rules in establishing easements for public use. ·

In Robbins et al. v. Houck et al., Tex. Civ.App., 251 S.W.2d 429, 431, writ ref., N.R.E., it is stated:

"It is the settled law of Texas that a dedication of land to the public must be made by the owner of such land. * * *

"In the instant case, all dealings, negotiations and conveyances were between Houston Construction Company, Inc. and appellants; and, since Houston Construction Company was not the owner of the land upon which a dedication is sought to be impressed by estoppel, neither Mr. Houck, its president, nor its agents or employees were authorized to dedicate or restrict the use of the lands of the Braes Heights Land Company.

"It is the settled law in this State that the Acts of an officer and director of two corporations does not make the acts of one corporation those of the other, or charge one corporation with the liabilities of another, even if the entire management of both corporations is the same."

Since, as we have stated herein, we do not believe that there was sufficient evidence of any grant, dedication, estoppel or any other act on the part of any owner of the Ranch property to establish the claimed easements, we do not believe that there was evidence to establish or create the park described as Tract Two in the Court's judgment, for the benefit of appellees and all other lot owners. Such oral agreements

or representations relied upon, having been made by a third person or persons, and there being no evidence of authority of any of such third persons to make such alleged oral representations, or oral agreements in behalf of the owner of said tract, they will not support the findings or judgment.

In view of our holding it is unnecessary to pass on the other assigned errors concerning admissibility of evidence, the charge or the jury's answers to the special issues.

The judgment of the Trial Court is reversed and judgment here rendered that appellees Drye et al. take nothing by their suit, and all clouds cast upon the title of the appellants by virtue of the claims asserted herein are expunged and removed under the appellants' cross action.

Reversed and rendered.