**B.J. SCOTT, Appellant,**

v.

**Robert C. KING, a/k/a Bob King, R.C. Enterprises, Inc., and Holiday Industries, Inc., Appellees.**

**No. 05–82–00128–CV.**

Court of Appeals of Texas, Dallas.

Feb. 11, 1983.

James K. Peden, III, Dallas, for appellant.

Joe Putnam, Irving, for appellees.

Before STEPHENS, WHITHAM and GUILLOT, JJ.

WHITHAM, Justice.

This appeal arises out of the development of a residential subdivision by appellees, Robert C. King, a/k/a Bob King, R.C. Enterprises and Holiday Industries, Inc. (collectively referred to as King) adjacent to property owned by appellant, B.J. Scott. Insofar as is pertinent to this limited appeal, Scott sought damages and injunctive relief arising out of a diversion of the natural flow of surface waters resulting from King's subdivision development and damages and injunctive relief arising out of an alleged trespass upon Scott's property in conjunction with King's development. The trial court granted King's motion for instructed verdict on Scott's trespass claims and entered a take-nothing judgment thereon. Following a jury verdict favorable to Scott, the trial court entered its judgment awarding Scott damages of $10,000 for damage to his property resulting from King's development, but refused to permanently enjoin further development of King's property and dissolved a temporary injunction against such development which had been in effect. On appeal Scott complains of the trial court's denial of injunctive relief and take-nothing judgment on the trespass claim. For the reasons that follow we reverse and remand.[1]

### The Denial of Injunctive Relief

Scott contends that the trial court erred in refusing to grant a permanent injunction with respect to the construction on King's property because the jury found that the construction diverted the natural flow of surface waters to Scott's property thereby damaging Scott's property and that the continuation of such construction would result in the erosion of Scott's property in the future. We agree. King made no motion to disregard these findings. Thus, it appears that the trial court on its own motion

disregarded the jury's findings that King's construction would result in damage to Scott's property by erosion from the diverted waters in the future.

 A trial court on its own motion may disregard a jury finding to a special issue which is immaterial. *Southern Pacific Transportation Co. v. Allen,* 525 S.W.2d 300, 304 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). When the issue is material, however, the judgment must conform to the finding. *Southern Pacific Transportation Co. v. Allen, supra,* at 304; *Massie v. Hutcheson,* 270 S.W. 544 (Tex.Com.App. 1925, judgmt. adopted). Under Rule 301 of the Texas Rules of Civil Procedure the trial court may disregard a material special issue only on a motion asserting that the finding has "no support in the evidence." The trial court may not do so on its own initiative. *Durham v. Uvalde Rock Asphalt Co.,* 599 S.W.2d 866, 876 (Tex.Civ.App.—San Antonio 1980, no writ); *Ballard v. Hillcrest State Bank of University Park,* 592 S.W.2d 373, 375 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

 In the present case we conclude that the special issues in question were material and that the trial court erred in not conforming the judgment to the finding of future harm to Scott's property. We conclude further that Scott was entitled to injunctive relief on that finding and that the trial court erred in denying Scott such injunctive relief. In *Wilson v. Hagins,* 116 Tex. 538, 295 S.W. 922, 924 (1927), the court directed that the jury should be asked to determine whether or not damage would occur to the plaintiff's property in the future as a result of the diversion of water. In the subsequent retrial of the case the jury was asked:

> If you find that the Defendant did divert the natural flow of the waters of Duck

---

1. On appeal appellees assert that none of them now own or control the real property, the development of which Scott seeks to enjoin and that an injunction against any of them, even if authorized, would now have no meaning regardless of whether the trial court properly refused Scott's request for an injunction at time of trial and that there is now no ground for injunctive relief against appellees. Scott refuses to concede that none of appellees now own or control the property in question. Therefore, we must proceed on the record on appeal before us.

Creek in such a manner as to damage the land of plaintiff, A.J. Hagins, then state whether or not damage will occur in the future to the land of A.J. Hagins from waters so diverted.

*Wilson v. Hagins,* 50 S.W.2d 797, 798 (Tex. Com.App.1932, judgmt. adopted). The jury's affirmative response to that issue was held to support a permanent injunction enjoining the adjoining landowner from maintaining the ditch and embankment constructed on his property which caused the water to divert resulting in damage to the plaintiff's property.

In the present case, the jury answered the following issue in the affirmative:

Do you find from a preponderance of the evidence that the construction of Mark and James No. 2 addition, according to present plans, will result in erosion of the Scott property in the future?

Tex. Water Code Ann. § 11.086 (Vernon Supp.1982–1983), provides in pertinent part:

(a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b) A person whose property is injured by an overflow of water caused by unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

As the Supreme Court reiterated in *Kraft v. Langford,* 565 S.W.2d 223 (Tex. 1978), the predecessor of this statute (virtually identical in language) served to add to the common law remedies for interferences with interest in real property a statutory cause of action in favor of property owners whose property had been injured by an overflow of surface waters caused by the diversion of their natural flow. The elements of this statutory cause of action are (1) a diversion of surface water which (2) causes (3) damage to the property of the complaining party. *Id.* at 229.

Moreover, we conclude that the complaining party is entitled to injunctive relief. As emphasized in *Sullivan v. Dooley,* 31 Tex. Civ.App. 589, 73 S.W. 82, 84 (Tex.Civ.App. 1903, no writ):

It was not necessary to allege that the wrongdoer was insolvent or unable to respond in damages. "To protect against constant or frequently recurring injuries from the wrongful diversion of water, equity has jurisdiction concurrent with courts of law, and will enjoin the wrongdoer, without regard to his ability to respond in damages, since a single action at law would not furnish an adequate remedy, and a multiplicity of suits can be avoided by proceeding in equity." *Roberts v. Vest* (Ala.) 28 So. 412 [126 Ala. 355]; *Railway v. Tait,* 63 Tex. 223; *Railway v. Seymour,* 63 Tex. [345] 347. It is held in the case of *Sumner v. Crawford,* 91 Tex. 129, 41 S.W. 994, that by virtue of the provisions of article 2989, Rev.St. 1895, an action for injunction may be maintained in cases "Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief, or any part thereof, requires the restraint of some act prejudicial to the applicant," although there may be an adequate remedy at law.

Thus, we hold, for the reasons stated and upon the authorities above cited, that where a landowner diverts the natural flow of surface water upon an adjoining landowner and the jury finds that continuing damage to the property of the adjoining landowner from such diversion will occur in the future, the adjoining landowner is entitled to a permanent injunction to protect his property from continuing future diversion of such water. Accordingly, we conclude that the trial court erred in denying Scott injunctive relief. Therefore, we reverse and remand to the trial court with instructions to enter a permanent injunction enjoining Robert C. King, a/k/a Bob King, R.C. Enterprises, Inc. and Holiday Industries, Inc. as subsequently provided in this opinion.

*The Trespass*

Next, we consider Scott's contention that the trial court erred in granting King's

motion for instructed verdict with respect to Scott's cause of action for trespass. The trespass issue arises out of work done on King's property, including the digging of an eight-foot ditch, that one of King's subcontractors performed for the purpose of laying a sewer line from King's development. King argues that his subcontractor was working on one or the other of two easements granted or dedicated by Scott, or his predecessors in title, to the City of Irving. Scott asserts that the trial court erred in holding as a matter of law that two easements for sanitary sewer purposes existed on and over his property and that King's subcontractor had a legal right to enter Scott's property over those easements.

One easement is a confirmation easement granted by Scott's predecessors in title. The second easement is an alleged dedication made on a plat filed by Scott. The witnesses agree that the actual sewer line in place on Scott's property is several feet east of the easement described in the confirmation easement. The record, however, is complicated by the fact that a witness noticed that if the starting point of the confirmation easement were located as described therein the easement would pass over property not owned by the grantors of the confirmation easement. He suggested that the direction call "North 88° 42' 00" West" could have been a clerical error, and should properly have been "North 88° 42' 00" *East.*" If the call were corrected, the easement would shift 15 feet east and lie generally along the easement as shown on a document discussed in detail below which Scott filed as his plat of the First Installment of Scott Estates, although not precisely on it because of a slight difference in calls. The witness also suggested that if the call were corrected the actual sewer line in place would be located on a portion of Scott's property subject to the confirmation easement. King, however, did not seek reformation or correction of the confirmation easement to obtain whatever rights, if any, reformation or correction would give him. Thus, King established no right to enter

upon Scott's property under the confirmation easement and a trespass occurred on Scott's property east of this easement if this were the only easement.

The actual sewer line in place is located, however, on a portion of Scott's property upon which King asserts an easement by virtue of an alleged dedication made on a document prepared by Scott, approved by the City of Irving, and filed as Scott's plat of the First Installment of Scott Estates. Therefore, a trespass did not occur on Scott's property if this second or additional easement exists by virtue of a dedication by Scott.

We turn then to the question of whether Scott dedicated an additional easement east of the location described in the confirmation easement. The controversy centers on the contents of the document which Scott filed as his plat of the First Installment of Scott Estates.

The document diagrams approximately 7.5 acres of land. However, the field notes contained in the owners certificate establishing the First Installment of Scott Estates do not include the entire 7.5 acres, but only approximately 1.6 acres of the land shown on the map.[2] For general descriptive purposes, this 1.6 acres (the First Installment of Scott Estates) lies in the northeast part of the Scott land. The actual sewer line in place does not lie within any part of the field notes describing the First Installment of Scott Estates. Scott's property under the confirmation easement does not lie within any part of the field notes describing the First Installment of Scott Estates. Scott, however, did show on the document filed what he considered the location of the existing sewer easement containing an actual sewer line in place and at that place on the document filed he referred to the volume and page where the confirmation easement was recorded.

We do not read Scott's owners certificate dedicating sanitary sewer lines in the 1.6 acres as a dedication of a sewer easement elsewhere in Scott's 7.5 acres. The limita-

**2.** Errors in these field notes do not effect our disposition of the case.

tions of Scott's certificate govern. We hold, therefore, that the dedications made by Scott in his owners certificate apply only to the property described therein by the field notes and not to Scott's remaining property diagramed on the document filed as the plat of the First Installment of Scott Estates.

The contents of the owners certificate aside, we next consider the effect of Scott's act of showing on the document filed what he considered to be the location of the existing sewer easement containing the actual sewer line in place with reference to the volume and page where the confirmation easement was recorded. We conclude that if Scott had intended to dedicate the easement in question he would have said so in the formal writing executed by him on the document filed (the owners certificate). Scott did not do so. An essential element of a valid dedication is that the owner of the land should intend to devote the land in question to the use and benefit of the public. This is an intention which must be clearly manifested. *Owens v. Hockett,* 151 Tex. 503, 251 S.W.2d 957 (1952); *Stewart v. Fitts,* 604 S.W.2d 371, 373 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.); *Ford v. Moren,* 592 S.W.2d 385, 390 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.). Scott testified that he did not intend to create a new easement when on the document filed he showed a sanitary sewer line on his property and referred to the confirmation easement, but rather intended only to show the existing sewer line on his property. Scott expressly denied that he intended to create any easements in addition to the easement already in existence under the confirmation easement. There is no evidence extrinsic to the document to the contrary. Thus, proof of Scott's intention to create the additional easement can be found only on the face of the document filed. The recording of a map or plat which shows streets or roadways thereon, without more, does not constitute a dedication, as a matter of law, of such streets as public roadways. *Aransas County v. Reif,* 532 S.W.2d 131 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.) (citing *County of*

*Calhoun v. Wilson,* 425 S.W.2d 846 (Tex.Civ. App.—Corpus Christi 1968, writ ref'd n.r. e.)). We conclude that the showing in question was made for the purpose of reference, was not intended as a dedication and did not constitute a dedication to anyone or to the public. *Cf. Eagle Rock Ranch, Inc. v. Drye,* 347 S.W.2d 730 (Tex.Civ.App.—Austin 1961), *aff'd as modified,* 364 S.W.2d 196 (Tex.1962), where the court observed:

[T]hat the showing of the recreational areas on the map was for the purpose of description and reference, and was not intended to be dedicated to appellees or anyone else and did not constitute a dedication of the areas to anyone.

347 S.W.2d at 741 (citing *City of Elsa v. Weaver,* 304 S.W.2d 212 (Tex.Civ.App.—Eastland 1957, no writ)). Accordingly, we hold that the recording of a map or plat which shows an easement thereon, without more, does not constitute a dedication, as a matter of law, of such easement as a public easement. Thus, we conclude that the matters in question which Scott showed on the document filed do not constitute a dedication as a matter of law of an additional easement.

We agree, therefore, with Scott that the trial court erred in holding as a matter of law that two easements for sanitary sewer purposes existed on and over his property and that King's subcontractor had a legal right to enter Scott's property over those easements. We hold, therefore, that the trial court erred in granting King's motion for instructed verdict with respect to Scott's cause of action for trespass.

We reverse the judgment of the trial court insofar as it denied Scott injunctive relief and remand to the trial court with instructions to issue its permanent injunction enjoining appellees from constructing their subdivision in any manner which results in injury to the property of Scott by reason of the overflow of diverted surface waters from the Mark and James No. 2 Addition onto Scott's property.

Further, we reverse the judgment of the trial court insofar as it denied Scott's cause

of action for damages for trespass and remand Scott's cause of action for trespass to the trial court.