**Irene LAMB, Appellant,**

v.

**Ruby Gaynell FRANKLIN and Allstate Indemnity Company, Appellees.**

No. 07–97–0243–CV.

Court of Appeals of Texas, Amarillo.

Aug. 25, 1998.

G. Ben Bancroft, Bancroft, Mouton & Wolf, Big Spring, for appellant.

John P. Levick, G. Douglas Welch, Jones, Flygare, Brown & Wharton, Lubbock, Jack O. Nelson, Jr., Nelson & Nelson, Lubbock, for appellees.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

DODSON, Justice.

Irene Lamb (Lamb) appeals a judgment rendered on a jury verdict in her favor on her personal injury suit against Ruby Gaynell Franklin (Franklin), and Allstate Indemnity Company (Allstate). Lamb raises two points of error. Franklin raises five cross-points. Allstate raises two cross-points. Because the trial court erred in disregarding material jury findings without a motion, and because there was no evidence supporting the jury's award for lost earnings, we reverse and render in part and reverse and remand in part.

This suit arises out of an automobile collision between Lamb and Franklin on October 31, 1995, in Levelland, Hockley County, Texas. Franklin turned left on a green light in front of Lamb who was approaching from the opposite direction between 35 and 40 miles per hour. Lamb applied her brakes, but the vehicles collided. Franklin was uninjured in the collision. Both vehicles were driven from the scene with minor damage. Lamb was admitted to the hospital that day and ultimately saw several doctors for treatment of back and neck injuries.

Lamb sued Franklin asserting an action for negligence. Lamb also sued her own insurance provider, Allstate, alleging that her injuries exceeded the coverage on the vehicle driven by Franklin ($50,000). Lamb alleged that pursuant to her contract for coverage with Allstate, Allstate was obligated to pay damages to her. The case came to trial on April 28, 1997.

The jury found that the negligence of both Franklin and Lamb proximately caused the collision, and that Franklin was 75% negligent and Lamb was 25% negligent. The jury further found the following amounts would compensate Lamb for her injuries: $0 for physical pain and mental anguish sustained in the past, $0 for physical pain and mental anguish that in reasonable probability she would sustain in the future, $2,000 for loss of past earnings, $0 for loss of earning capacity, $1,000 for physical impairment sustained in the past, $0 for physical impairment in reasonable probability she would sustain in the future, $7,000 for reasonable expenses of medical care in the past, and $1,000 for reasonable expenses of medical care in reasonable probability she would sustain in the future.

### Lamb's Points of Error

Lamb raises two points of error. By her first point of error, Lamb contends that the jury's answer to the question regarding Lamb's physical pain and mental anguish

sustained in the past is so contrary to the great and overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Through her second point of error, Lamb contends that the jury's answer to the question regarding the amount necessary to compensate Lamb for the physical pain and mental anguish that in reasonable probability she would sustain in the future is so contrary to the great and overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Because Lamb did not present uncontroverted objective evidence of objective injury, we do not agree that the jury's zero answers were so against the great weight of the evidence as to be manifestly unjust.

In reviewing a factual sufficiency point we examine all of the evidence in the record, both for and against the challenged finding, in determining whether the finding in question is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986)(on rehearing); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). When we review the evidence, we may not reweigh it and set aside the verdict merely because we feel a different result is more reasonable. *Pool v. Ford Motor Co.*, 715 S.W.2d at 634. The jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury may believe one witness and disbelieve another. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). The jury resolves inconsistencies in any witness's testimony. *Id.* Finally, we are mindful that Lamb, by a preponderance of the evidence, failed to convince the jury of a fact essential to her recovery. *See Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex.1988).

To uphold a jury's finding that an injured party incurred no damages for past pain and suffering, the jury must have found by a preponderance of the evidence that no pain and suffering accompanied the injury. *Hammett v. Zimmerman*, 804 S.W.2d 663, 665 (Tex.App.—Fort Worth 1991, no writ). When uncontroverted evidence of an objective injury exists, a jury finding that the plaintiff suffered no past pain and suffering is against the great weight and preponderance of the evidence. *Id.* at 664. However, a jury may deny an award of damages when the injuries sustained are subjective in nature. *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 805 (Tex.App.—Dallas 1988, no writ). Moreover, uncontroverted evidence of an objective injury does not always require mental anguish damages. *See Elliott v. Dow*, 818 S.W.2d 222, 224–25 (Tex.App.—Houston [14th Dist.] 1991, no writ).

Courts have upheld the jury's no injury or "zero damages" findings in cases where there is both subjective and objective evidence of the element of damages. In *Srite v. Owens–Illinois, Inc.*, 870 S.W.2d 556 (Tex.App.—Houston [1st Dist.] 1993) rev'd on other grounds, 897 S.W.2d 765 (Tex.1995), the court of appeals concluded that where the preponderance of the evidence of injury was subjective, the jury answer of $0 was warranted. *Id.* at 563. The court noted that the plaintiff's expert testimony was contradicted by the defense's experts, and was thus not uncontroverted. *Id.* In *Pilkington v. Kornell*, 822 S.W.2d 223 (Tex.App.—Dallas 1991, writ denied), the jury did award some past and future medical expenses, but awarded no damages for, among other things, past and future pain, suffering and mental anguish.[1] The Dallas Court determined that the evidence was conflicting and concluded that the verdict was not so against the great weight of the evidence as to be manifestly unjust. *Id.* at 230.

---

1. *Pilkington* is factually similar to the case before us. In *Pilkington*, plaintiff's vehicle was rear-ended at about 15 miles per hour. The defendant was not injured except for some bruises. Immediately after the accident, the plaintiff had severe pain in her head. She never had any problems prior to the accident. X-rays and

MRI's of the plaintiff actually showed some objective signs of injury; namely an irregularity in her spine and an "anterior glenoid labrum tear." However, within one year of the accident, the MRI was normal. Otherwise, the only objective sign of injury was muscle spasms.

■ In this instance, the record reflects that Lamb testified extensively about the pain caused by the accident and the painful treatments she underwent to alleviate her problems. She also testified that she had a restricted range of motion in her neck as a result of the accident. There was testimony from several witnesses including Lamb that x-rays, an MRI, and a CAT scan showed no orthopedic injury and that she suffered a soft tissue injury.

Several doctors and a physical therapist testified on Lamb's behalf. Collectively, they described Lamb's subjective complaints of pain, as well as their own observations of her condition. The witnesses who examined Lamb described muscle tightness or tenderness in her back and neck and a restricted range of motion in her neck. The medical witnesses described the types of treatments Lamb received, including "trigger point injections" (shots of various drugs directly into muscles that are in spasm), deep massage (which the testifying witnesses agreed was a painful procedure), and various home exercises. Lamb also had "contusions" (bruises) on her back which were noted in hospital records. To varying degrees, these witnesses agreed that Lamb had improved somewhat under the treatments, but had not fully recovered. Different medical witnesses expressed different opinions as to whether Lamb had recovered as much as she could, or if further treatment would improve her recovery. Many of these observations and comments were recorded in hospital and doctors' records.

There was certainly subjective evidence of pain. Likewise, there was some objective evidence from Lamb's physicians and therapist showing that she suffered pain. However, the defense pointed out that every evaluation by each health care provider relied in part on responses from Lamb about her level of pain, making each evaluation at least partly subjective. There was also evidence that Lamb was seen by various persons carrying a grandchild or doing yard work. Lamb herself testified that she had done these things, while asserting that she was prevented from doing yard work or playing with her grandchildren. These witnesses testified that they saw Lamb moving her head and neck without difficulty until she noticed she was being watched. Moreover, the objective tests performed on Lamb, namely the x-rays, MRI, and CAT scan, showed no injury.

There was also evidence that the actual impact occurred at a very low speed since Lamb was initially traveling at under 40 miles per hour, she hit her brakes prior to the impact, and she believed she actually might not hit Franklin's car. The other driver involved in the accident was not injured. Damage to the vehicles was minor, and both were driven away from the accident scene.

Additionally, several of the medical witnesses admitted that tight muscles could be the result of high tension. Lamb's husband was suffering from severe medical problems for some time prior to the automobile accident. At that time and throughout her treatment, Doyle Lamb was alternately confined to his home or was admitted for hospital stays. Lamb referred to stress and tension related to her husband's condition when talking to her physical therapist, which the therapist noted in her records.

Finally, the defense presented testimony from Dr. Heydemann, who reviewed Lamb's case. Heydemann testified that Dr. Wolcott's records did not support a diagnosis of myofascitis and that myofascitis is generally diagnosed based on complaints from the patient when all other options have been ruled out.[2] He also testified that there was evidence in the medical records indicating that Lamb was either faking or exaggerating her complaints for financial or other gain.

■ Since there was conflicting evidence regarding past and future pain, the matter was clearly a question for the jury. It is not within the province of this Court to interfere with the jury's resolution of conflicts in the

**2.** Myofascial pain was described by Dr. Wolcott as being caused by muscle that has changed character, that is no longer functioning the same way and elicits subjective complaints from the patient. Dr. Heydemann defined myofascial syndrome as a diagnosis that is based on subjective complaints of a patient, when all else has been ruled out. The term "myofascitis" was used at trial interchangeably with these other terms.

evidence, or to pass on the weight or credibility of the witnesses' testimony. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792, 796 (1951). Moreover, a jury's failure to find a fact vital to recovery need not be supported by affirmative evidence. *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973). Accordingly, we conclude that the jury's findings on past and future pain and mental anguish are not so against the great weight and preponderance of the evidence as to be manifestly unjust. The jury's award comports with Dr. Heydemann's testimony in that they awarded exactly the amount of medical expenses that he testified were reasonable, and they awarded nothing for pain and suffering, past or future. We conclude that the challenged jury findings are not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Accordingly, we overrule Lamb's first and second points of error.

## Franklin's Cross–Points

Franklin asserts five cross-points in her brief. By her first three cross-points, Franklin contends that the trial court reversibly erred when it sua sponte rendered a modified judgment and judgment non obstante veredicto because there was no written motion requesting such relief, in sua sponte disregarding the jury's affirmative findings of negligence and apportionment, and that there was some evidence supporting the jury's affirmative findings of apportioned negligence. Because the record does not reflect that a motion for judgment non obstante veredicto was filed, or that a hearing on such motion was had, we conclude that the trial court erred in granting such relief.

Rule 301 of the Texas Rules of Civil Procedure reads in relevant part:

> The judgment of the [trial] court shall conform to the pleadings.... Provided, that *upon motion and reasonable notice* the court may render judgment non obstante verdicto if a directed verdict would have been proper, and provided further

that the court may, *upon like motion and notice,* disregard any jury finding on a question that has no support in the evidence. (emphasis added).

■ We note at the outset that the trial court's modified judgment and judgment non obstante veredicto does not recite the filing of a motion for judgment j.n.o.v., the fact of notice or waiver, that hearing was had, the appearances, or a ruling on the motion. Absent such recitals in the judgment, the record may be considered to determine whether the facts are shown elsewhere. *See Hines v. Parks,* 128 Tex. 289, 96 S.W.2d 970 (1936). However, if the motion, notice, and hearing are not shown by any part of the record, a judgment disregarding the verdict or specific findings under Rule 301 will be reversed. *Id.* A trial court may on its own motion disregard a jury finding which is immaterial. *Scott v. King,* 647 S.W.2d 394, 396 (Tex. App.—Dallas 1983, no writ). Nevertheless, the trial court may not disregard a material finding on its own motion. *Id.* A question is immaterial only when it should not have been submitted or though properly submitted, it has been rendered immaterial by other findings. *Id.*

■ In the matter before us, Lamb objected orally to the submission of the comparative negligence issue on the grounds that there was no evidence of any negligence on her part. The court overruled the objection. After trial, Lamb filed a motion for new trial asserting that the jury's finding that Lamb was negligent was against the great weight and preponderance of the evidence and that the facts in evidence were insufficient to support the jury finding. Lamb contends that the trial court's subsequent modification of the judgment was proper based on her initial objection and her motion for new trial pursuant to Rule 329b(e) of the Texas Rules of Civil Procedure.[3] It is Lamb's position that the modified order was merely a recognition by the trial court that its initial ruling on her objection to the submission of the

---

**3.** "If a motion for new trial is timely filed by any party, the trial court, regardless of whether an appeal has been perfected, has plenary power to grant a new trial or to vacate, modify, correct, or reform the judgment until 30 days after such timely filed motions are overruled, either by written and signed order or by operation of law, whichever occurs first." Tex.R. Civ. P. 329b(e).

comparative fault questions was improper. We do not agree.

The record is devoid of a motion to disregard the jury findings as to the comparative fault questions that were submitted. Lamb's motion for a new trial cannot serve as the basis for such relief. Before a trial court can render a judgment non obstante veredicto, it must determine that there is no evidence having probative force upon which the jury could have made the findings relied upon. *Harbin v. Seale*, 461 S.W.2d 591, 592 (Tex. 1970). Lamb's motion for new trial asserts that there is insufficient evidence of her negligence, but not that there is no evidence.

In any event, there is some evidence to support the comparative fault finding. Lamb testified that she was running numerous errands on her one hour lunch break. She also admitted that she had a sandwich in the vehicle with her, which the responding police officer found on the floor of the vehicle after the accident. Lamb also testified that she had a drink with her, although the police officer did not find it. These facts were sufficient for the jury to infer that Lamb was either in a rush, or eating while driving, or both. No other jury finding renders the comparative fault finding immaterial. Since there was no motion to disregard the jury's findings, and the questions on comparative fault were material, and there was some evidence of probative force to support the jury finding, the trial court erred in rendering the modified judgment non obstante veredicto which disregarded the findings. Accordingly, Franklin's first three cross-points are sustained.

■ By her fourth cross-point, Franklin asserts that the trial court erred in overruling her own motion for judgment non obstante veredicto because there was no evidence to support the jury's finding of lost earnings sustained in the past by Lamb. We agree.

The jury found that Lamb suffered a loss of $2,000.00 earnings in the past. However, Lamb testified that she had not lost any pay during the time she was away from work. The only evidence possibly supporting an award for lost earnings comes from testimony that Lamb missed 28 1/2 days of work as a result of her injuries. However, there is no evidence in the record showing that Lamb's sick leave was compensable time; that is, there is no evidence that by using sick leave, Lamb was losing any wages or compensation. Accordingly, the trial court erred in overruling the appellees' objections and motions notwithstanding the verdict as to the jury award on lost earnings. We sustain Franklin's fourth cross-point.

■ By her fifth cross-point, Franklin contends that the trial court erred in overruling her motion for judgment notwithstanding the verdict because there is no evidence to support the jury's finding that Lamb will, in reasonable probability, incur necessary medical care in the future. Franklin contends that there is no evidence that Lamb, in reasonable medical probability, will require necessary medical treatment in the future. Franklin also contends that there is no evidence linking the auto accident to the injuries Lamb would need future treatment for. We disagree.

Randall Wolcott, one of Lamb's doctors, testified that Lamb would "probably" in the future have "exacerbations" and that she would "need some management." He stated that physical therapy costs $80.00 per session, and a flair up would entail 6 to 8 sessions. Dr. Balch, who works with Lamb, testified that in his opinion the primary reason for Lamb's condition was the automobile accident. Finally, Gisela Mueller, Lamb's physical therapist, testified that she believed Lamb could benefit from future therapy and that her condition might improve from such treatment. These witnesses spoke not only in terms of Lamb's apparent pain levels, but also in regard to her mobility and range of motion.

Texas courts have consistently held that the award of future medical expenses is primarily a matter for the jury to determine. *Hughett v. Dwyre*, 624 S.W.2d 401, 405 (Tex. App.—Amarillo 1981, writ ref'd n.r.e.). The same conflicting evidence that supports the jury's determination of zero damages for past and future pain also supports the submission of the question on future medical care. Moreover, the jury's award for future medical treatment is not inconsistent with the

zero finding for past and future pain; the jury could have believed that Lamb would in all reasonable probability need future treatment to regain mobility and range of motion. Based on this evidence, the trial court properly denied Franklin's motion for judgment notwithstanding the verdict. We overrule Franklin's fifth cross-point.

### Allstate's Cross–Points

Allstate raises two cross-points of error. By its first point, Allstate asserts that the trial court erred in overruling its objection to the submission of the jury question on lost earnings in the past. By its second cross-point, Allstate contends that the trial court erred in overruling its motion for judgment notwithstanding the verdict because there is no evidence to support the jury's finding that Lamb will, in reasonable probability, incur necessary medical care in the future. Allstate's first cross-point raises essentially the same issue raised by Franklin's fourth cross-point. Allstate's second cross-point raises the same issue raised in Franklin's fifth cross-point. We refer to the above discussion on those matters. Accordingly, we sustain Allstate's first cross-point and overrule Allstate's second cross-point.

In sum, we overrule Lamb's first and second points by which she challenged the jury's failure to find damages for her claimed past and future physical pain and mental anguish. Also, we sustain Franklin's first, second and third cross-points of error by which she challenges the trial court's sua sponte action disregarding the jury's negligence and apportionment findings against Lamb. Further, we sustain Franklin's fourth cross-point and Allstate's first cross-point of error by which they challenged the jury's award of $2,000 to Lamb for past loss of earnings because there is no evidence to support the award. Lastly, we overrule Franklin's fifth cross-point and Allstate's second cross-point by which they challenged the jury's award of $1,000 to Lamb for future medical care.

Accordingly, we reverse the trial court's judgment signed on July 24, 1997, and render judgment as follows:

It is acknowledged that by virtue of a stipulation entered into by the parties and their counsel of record in this cause in the trial court, Allstate Indemnity Company is subrogated to the rights of Irene Lamb in the amount of $5,000 out of Lamb's recovery from Ruby Gaynell Franklin, and that Allstate Indemnity Company is entitled to recover such sum from Franklin.

It is, therefore, ordered, adjudged and decreed that Irene Lamb and Allstate Indemnity Company do have and recover $6,750 from Ruby Gaynell Franklin, apportioned as follows: to Allstate, the sum of $5,000 plus post-judgment interest at the legal rate from July 24, 1997, until paid; to Irene Lamb, the sum of $1,750 plus post-judgment interest from July 24, 1997, until paid.

It is further ordered, adjudged and decreed that Irene Lamb is entitled to recover pre-judgment interest on the $6,750 sum. In this connection, we sever this matter from the instant action and remand the pre-judgment interest matter to the trial court for a determination of the amount of pre-judgment interest and the rendition of judgment for such interest in favor of Irene Lamb against Ruby Gaynell Franklin.

Costs in the trial court are adjudged against Ruby Gaynell Franklin.

Costs in this appellate court are adjudged against Irene Lamb.