COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-01-080-CV
 
 
THE 
LAW OFFICES OF WINDLE                                               APPELLANT
TURLEY, 
P.C.
 
V.
 
ROBERT 
L. FRENCH, INDIVIDUALLY                                         APPELLEES
AND 
ON BEHALF OF THE ESTATE
OF 
VELMA RAE FRENCH, DECEASED,
ROBERT 
R. FRENCH, GWENDA DUNN,
LINDA 
GILLILAND, AND ROBIN FRENCH
 
 
------------
 
FROM 
THE 141ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION ON REHEARING
 
------------
Introduction
        After 
we issued our original opinion in this case, The Law Offices of Windle Turley, 
P.C. (LOWT) moved for rehearing.  We grant the motion for rehearing, 
withdraw our opinion, dissenting opinion, and judgment of February 6, 2003, and 
substitute the following.
        The 
primary issue we must decide in this case is whether the trial court properly 
granted appellees[1] summary judgment on LOWT’s 
petition in intervention to recover attorney’s fees under several contingent 
fee agreements.  Because we conclude that there are genuine issues of 
material fact on each of the Frenches’ grounds for summary judgment, we will 
affirm the summary judgment in part and reverse and remand in part.  We 
will also modify the trial court’s judgment on damages in part and affirm as 
modified.
Background
        Beginning 
in December 1995, all of the appellees except Gwenda Dunn signed contingent fee 
agreements in which they retained LOWT to represent them in a medical 
malpractice suit. LOWT attorney Michael G. Sawicki filed the medical malpractice 
suit on the Frenches’ behalf on September 5, 1997 and served as LOWT’s lead 
counsel for that suit.  In February 2000, Sawicki, who was apparently the 
sole remaining attorney in LOWT’s medical malpractice section, left LOWT to 
start his own law firm.  By that time, LOWT had incurred $32,585.48 in 
out-of-pocket expenses prosecuting the Frenches’ claims.  John Kirtley 
took over the case on LOWT’s behalf.  Shortly thereafter, Robert L. 
French instructed Kirtley not to perform any more work on the case until Mr. 
French could speak with LOWT’s president, Windle Turley.
        Turley 
assured Mr. French that LOWT was “perfectly capable” of handling the 
Frenches’ case and stood ready and willing to do so.  Turley himself had 
litigated and tried to verdict numerous personal injury cases, including medical 
malpractice cases.[2]  Turley regarded Kirtley, 
who was board certified in personal injury law, as an experienced trial 
attorney.  In addition, Turley promised that Kirtley’s handling of the 
Frenches’ case would be under Turley’s close supervision and oversight.
        Despite 
Turley’s assurances, on April 20, 2000, Mr. French asked for the case files 
and informed LOWT that he was going to hire Sawicki to try the case.  Mr. 
French explained that he was taking this action because, without Sawicki, LOWT 
did not have anyone well-versed in trying medical malpractice cases.  In 
particular, Mr. French expressed his concern over Kirtley’s lack of medical 
malpractice experience.  Mr. French also reminded LOWT that the case had 
previously been delayed when the Frenches lost their first attorney (before LOWT) 
and expressed concern over further delay that could be caused if Sawicki was not 
allowed to continue handling the case.  In addition, Mr. French offered to 
reimburse LOWT for its out-of-pocket expenditures in the event the Frenches 
prevailed on their medical malpractice claims and urged Turley to work out a 
joint venture fee agreement with Sawicki, despite having been told of Turley’s 
statement that “that would never happen.”
        On 
April 28, 2000, LOWT filed a notice of assignment of attorney’s fees, 
asserting that the Frenches had terminated the contingent fee agreements without 
good cause and that LOWT was therefore entitled to recover the full contingent 
fee and its expenses under the agreements.  On May 10, 2000, LOWT filed an 
agreed motion to withdraw, substituting Sawicki and his new firm as lead counsel 
for the Frenches.  Also on May 10, LOWT filed a first supplemental motion 
to withdraw, averring that the withdrawal was not voluntary and that the 
Frenches had unilaterally terminated LOWT’s representation.  The motion 
further stated: “Although [LOWT is] willing to continue its representation of 
the Plaintiffs, in compliance with the wishes of Mr. French, on behalf of all 
Plaintiffs, Plaintiffs’ counsel request that [LOWT] be allowed to withdraw as 
attorneys of record and substitute Mr. Michael G. Sawicki . . . as lead counsel 
for Plaintiffs.”  The trial court granted LOWT’s first supplemental 
motion to withdraw on May 11.
        In 
July 2000, LOWT filed a petition in intervention in the Frenches’ medical 
malpractice suit, seeking the full fee under the contingent fee agreements.  
The Frenches moved to strike the petition in intervention.  Also, at some 
point, Mr. French filed a grievance with the State Bar of Texas, asserting that 
LOWT was not entitled to its full contingent fee based on the circumstances of 
the case.  The grievance was dismissed, and the dismissal was affirmed in 
August 2000 by the Texas Board of Disciplinary Appeals.
        Thereafter, 
in September 2000, the Frenches asked LOWT to agree to submit the parties’ fee 
dispute to the Texas Bar Association Fee Dispute Committee for resolution.  
The Frenches also authorized Sawicki to reiterate their previous offer to 
reimburse LOWT for expenses and to share attorney’s fees.  In October and 
November 2000, the Frenches asked LOWT to take the case back and sent their case 
files back to LOWT’s offices.  LOWT refused to take the case back and 
returned the Frenches’ case files to Sawicki’s office.
        In 
early November 2000, Sawicki filed a motion to withdraw and to substitute LOWT 
as the Frenches’ counsel.  LOWT did not oppose Sawicki’s withdrawal, 
but refused to be substituted as counsel.  In its response to Sawicki’s 
motion to withdraw, LOWT stated:
 
Prior 
to the French family, without good cause, terminating our contract, we made 
every reasonable attempt, and extended our hand of assistance, at providing the 
French family the opportunity to allow our firm to continue to represent them in 
the above cause, and were prepared to do so, until their termination of our 
firm.  Beyond termination, reconciliation of the attorney-client 
relationship, and our continued representation of Plaintiffs, might have been 
possible.
 
However, 
due to the fact that Mr. French has filed a grievance against our firm, the 
amount of time that has passed since our being terminated and our concern as to 
whether Mr. Sawicki has been diligently pursuing the French family’s claims, 
we believe that the attorney-client relationship, between our firm and the 
French family, would not be feasible because of discord or conflict of 
personalities that destroys the legitimate ends of the attorney-client 
relationship and prevents any reasonable expectation of reconciliation or 
continued representation. . . . We should not be made to assume any risks, if 
any, in Mr. Sawicki’s intervening handling of this file after it left our 
firm.
 
. 
. . . We do not, now, intend to represent the French family, and we believe they 
should seek other legal counsel.
  
                . 
. . .
 
It 
is preposterous for Mr. Sawicki to plead that our pursuit of our legally 
assigned interest in the case “has the effect of making it impossible for the 
Frenches to find other counsel” when they are clearly represented by Mr. 
Sawicki.  It may be that Mr. Sawicki, charged with the knowledge of the law 
regarding contingency fee contracts, assumed any risk in, in any way, inducing 
the French family to terminate our firm and hire Mr. Sawicki. . . .
 
                . 
. . .
 
Our 
position is not to be construed as a waiver of any rights we have under our 
contract with the French family, those rights having been asserted in our 
intervention herein . . . .
 
 
        The 
trial court set Sawicki’s motion to withdraw for hearing on December 18, 2000.  
On that date, the trial court entered an order granting the Frenches’ motion 
to strike and dismissed LOWT’s petition in intervention.[3]  
In January 2001, the Frenches obtained a favorable jury verdict in their medical 
malpractice suit, and LOWT refiled its petition in intervention on January 18, 
2001.  On January 19, the trial court rendered judgment on the jury’s 
medical malpractice verdict, awarding the Frenches a total of $550,212.32 in 
damages and prejudgment interest and $4,534.80 in costs.
        On 
February 6, 2001, LOWT filed a motion for summary judgment on its petition in 
intervention.  The Frenches also moved for summary judgment, on February 
13, 2001.  On February 15, LOWT filed its response to the Frenches’ 
motion for summary judgment.
        At 
a hearing on February 15, the trial court orally granted the Frenches’ summary 
judgment motion.  On February 28, 2001, the trial court rendered judgment 
granting the Frenches’ motion for summary judgment and denying LOWT’s 
motion.  This appeal followed.
Issues Presented
        LOWT 
argues in its first issue that summary judgment for the Frenches is improper 
because none of the Frenches’ legal theories support the judgment.  The 
Frenches moved for summary judgment on five grounds: 1) LOWT abandoned its 
contingent fee agreements with the Frenches; 2) LOWT’s attempt to recover its 
contingent fee is unconscionable; 3) the contingent fee agreements violate 
public policy; 4) the Frenches had good cause to terminate the contract with 
LOWT; and 5) LOWT had no contract with Gwenda Dunn.  The summary judgment 
does not state the ground on which the trial court granted judgment; therefore, 
we must affirm the summary judgment if any of the Frenches’ theories are 
meritorious.[4]
Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law.[5]  The burden of proof is on the movant, and all doubts 
about the existence of a genuine issue of material fact are resolved against the 
movant.[6]  Therefore, we must view the evidence 
and its reasonable inferences in the light most favorable to the nonmovant.[7]  In deciding whether there is a material fact issue 
precluding summary judgment, all conflicts in the evidence are disregarded, and 
the evidence favorable to the nonmovant is accepted as true.[8]  
Evidence that favors the movant’s position will not be considered unless it is 
uncontroverted.[9]
Abandonment of Contract
        LOWT 
argues that the trial court erred if it granted the Frenches’ motion for 
summary judgment based on the theory that LOWT abandoned its contract with the 
Frenches.  For the acts of a party to a contract to constitute abandonment, 
the acts must be positive, unequivocal, and inconsistent with the existence of 
the contract.[10]
        LOWT’s 
response to the Frenches’ summary judgment motion included the affidavit of 
Windle Turley.  Turley stated in his affidavit that, following Sawicki’s 
departure from the LOWT law firm, he advised Mr. French that LOWT was continuing 
to prosecute the Frenches’ claims.  Turley also averred in his affidavit 
that, before the Frenches terminated their contract, he assured Mr. French that 
LOWT was ready, willing, and able to take care of the case.
        Disregarding 
the conflicting evidence and accepting Turley’s statement as true, we hold 
that the record does not reflect that the Frenches have conclusively proven all 
the elements of their abandonment defense.  Accordingly, we sustain 
LOWT’s subissue to the extent that the trial court relied on a theory of 
abandonment in granting the summary judgment.
Unconscionable Attempt to Collect Fee
        LOWT 
further argues that the trial court erred in granting the Frenches’ motion for 
summary judgment if the court relied upon the Frenches’ theory that LOWT’s 
contingent fee or its attempt to collect its full 45% contingent fee was 
unconscionable and violated the Texas Disciplinary Rules of Professional 
Conduct.
        A 
lawyer shall not enter into an arrangement for or charge an unconscionable fee, 
which is a fee that a competent lawyer could not reasonably believe is 
reasonable.[11]  Several factors are considered 
in determining the reasonableness of a fee, including but not limited to the 
time and effort required, the difficulty of the case, the skill of the attorney, 
and the customary fee charged in the legal community for a similar case.[12]
        There 
is no contention in the Frenches’ motion for summary judgment that a 45% 
contingent fee agreement in a medical malpractice case is itself unconscionable. 
Instead, the Frenches argue that LOWT’s “attempt to collect” its full 45% 
contingent fee, “when [LOWT] refused to perform under the contract and did not 
participate in the trial of the case, is unconscionable and constitutes a breach 
of the fiduciary duty created by the Texas Disciplinary Rules of Professional 
Conduct.”[13]  To support this argument, the 
Frenches rely on James M. McCormack’s sworn affidavit in which he avers that, 
based on his experience, LOWT’s “contract claims for a full 45% contingent 
fee in a case in which [LOWT] is no longer counsel, rendered only preliminary 
legal services, and can claim no participation in either the preparation of the 
case for trial or the trial of the case itself—indeed, even refused to 
represent the French[es] in trial—constitute an unconscionable legal fee.”  
Controverting McCormack’s statement, Turley stated in his affidavit that based 
upon his experience, the contract fee was not only usual and customary, but was 
also reasonable and necessary for medical malpractice cases in Texas.[14]
        Disregarding 
the Frenches’ evidence and accepting Turley’s statements as true, we hold 
that the Frenches did not conclusively meet their burden of proof regarding the 
alleged unreasonableness of LOWT’s contingent fee or LOWT’s claim for the 
full 45% contingent fee.  We sustain LOWT’s subissue to the extent that 
the trial court granted summary judgment based on a determination that LOWT’s 
contingent fee or its attempt to collect the fee is unconscionable.
Public Policy
        LOWT 
also argues that the trial court erred in granting the Frenches’ motion for 
summary judgment if the court relied on the Frenches’ argument that the 
contingent fee violates public policy.  Relying on Rule 1.15 of the Texas 
Disciplinary Rules of Professional Conduct, the Frenches argue that inherent in 
a client’s absolute right to discharge his or her attorney is the client’s 
absolute right to be discharged from all contractual obligations with the 
attorney.[15]  The Frenches contend that if 
clients are held liable to discharged attorneys for contingent fees, they are 
effectively prevented from exercising their right to discharge their attorneys 
at will, in contravention of public policy.
        In 
Mandell & Wright v. Thomas, the Supreme Court of Texas declared that 
“when the client, without good cause, discharges an attorney before he has 
completed his work, the attorney may recover on the contract for the amount of 
his compensation.”[16]   We are bound by 
this decision and sustain LOWT’s subissue to the extent the trial court 
granted summary judgment based on a determination that LOWT’s contingent fee 
agreement violated public policy.
Good Cause
        LOWT 
next contends that the trial court erred if its judgment was based on a finding 
that the Frenches had good cause to terminate the contract.[17]   
Whether a client had good cause for discharging an attorney with whom he 
contracted to provide legal services is a fact issue for the jury to decide.[18]
        The 
Frenches contend that they had good cause to terminate the contingent fee 
agreements because after Sawicki left LOWT they did not believe LOWT and Kirtley 
had sufficient experience in handling medical negligence cases, nor did they 
want their case further delayed by the substitution of lead counsel.  
Turley stated in his affidavit that he and Kirtley were Board Certified in 
Personal Injury Trial Law by the Texas Board of Legal Specialization.  
Turley also averred that he told Mr. French that Kirtley would be under 
Turley’s supervision and that Turley had litigated and tried medical 
malpractice cases to verdict.  Finally, Turley averred that LOWT was ready, 
willing, and able to handle the case without delay.
        Disregarding 
all conflicts in the evidence and accepting LOWT’s evidence as true, we hold 
that the Frenches have not conclusively proven that they had good cause to 
terminate the contract with LOWT.[19]   We 
sustain this subissue to the extent the court relied on the good cause ground in 
granting summary judgment.
Gwenda Dunn
        In 
addition, LOWT argues that the trial court erred in granting the Frenches’ 
no-evidence portion of their motion for summary judgment on the ground that LOWT 
had no contract with Gwenda Dunn because doing so would have granted more relief 
than the Frenches requested.
        The 
Frenches’ motion for summary judgment specifically limited the no-evidence 
argument to Dunn. LOWT conceded that it had no contract with Dunn, and it does 
not contest the validity of the judgment as to Dunn in this appeal.  If, 
however, the trial court granted the Frenches’ motion for summary judgment as 
to all of the Frenches based on the fact that there was no evidence of a 
contract with Dunn, it would have done so in error.  We sustain this 
subissue of LOWT’s first issue.[20]
Modification of Judgment to Conform to Jury’s 
Findings
        Finally, 
LOWT argues that the damage award in the underlying suit should be modified 
because the judgment did not conform to the jury’s findings.  The trial 
court’s judgment in the medical malpractice case and its final judgment 
rendered after ruling on the petition in intervention awarded the damages caused 
by Dr. Michael W. Dotti to all of the Frenches.  Conversely, the jury 
determined that Robert L. French should be compensated $400,000 for his past and 
future damages and that the estate of Velma Rae French should be compensated 
$27,000 for medical, funeral, and burial expenses.  The jury specifically 
found in its verdict that no sum of money should be awarded to Robin French, 
Gwenda Dunn, Linda Gilliland, or Robert R. French.
        We 
address the trial court’s damages award in the underlying judgment because 
LOWT timely intervened before the trial court rendered judgment against Dr. 
Dotti[21] and because the resulting judgment affects 
LOWT’s interest, if any, in its contracts with the Frenches.[22]   
The parties agree that LOWT did not have a contract with Dunn; accordingly, 
there is no question that damages awarded to Dunn would not be subject to 
LOWT’s contractual claims.  Therefore, if the trial court’s award of 
damages to all the Frenches was in error and Mr. French should have been the 
only plaintiff compensated for his damages, then LOWT’s contractual rights 
have been adversely affected.
        A 
judgment must “conform to the pleadings, the nature of the case proved and the 
verdict.”[23]   When the trial court 
modifies a judgment, enters a judgment non obstante veredicto, or disregards the 
jury’s verdict, the trial court must act pursuant to a motion and must provide 
notice and a hearing.[24]   If the record 
does not reflect the motion, notice, and hearing, “a judgment disregarding the 
verdict or specific findings under Rule 301 will be reversed.”[25]
        The 
record does not reflect a motion to modify or to disregard the jury’s 
findings, and the trial court cannot disregard the jury’s findings and enter a 
different judgment on its own initiative.[26]   Accordingly, 
the trial court erred in awarding any damages to Dunn, Gilliland, Robin French, 
and Robert R. French.  We sustain LOWT’s final issue.
        Having 
sustained LOWT’s complaints regarding the granting of the Frenches’ motion 
for summary judgment and the damages award based on the jury’s verdict, we 
reverse the trial court’s summary judgment for appellees except as to the 
no-evidence summary judgment for Gwenda Dunn.  In order to conform the 
damages award in the judgment to the jury’s verdict, we also modify the trial 
court’s final judgment to state:
 
It is further ordered, adjudged, and decreed 
that all sums awarded to Plaintiffs against Defendants are hereby awarded in 
their entirety to Plaintiff Robert L. French, Individually and on Behalf of the 
Estate of Velma Rae French, Deceased.
 
It is further ordered, adjudged, and decreed 
that Robin French, Gwenda Dunn, Linda Gilliland, and Robert R. French be awarded 
$0 on their claims against Michael W. Dotti, M.D.
 
 
We 
affirm the summary judgment for Dunn and the damages award in the final judgment 
as modified.  We remand the contingent attorney’s fees issue between LOWT 
and Robert L. French, individually and on behalf of the estate of Velma Rae 
French, deceased for trial on the merits.
 
 
                                                                  JOHN 
CAYCE
                                                                  CHIEF 
JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; and DAUPHINOT, J.; and SAM J. DAY, 
J. (Retired, Sitting by Assignment)
 
DELIVERED: 
June 24, 2004

 
NOTES
1.   
Appellees are Robert L. French, individually and on behalf of the estate of 
Velma Rae French, deceased, Robert R. French, Gwenda Dunn, Linda Gilliland, and 
Robin French (the Frenches).
2.  
Turley was board certified in personal injury law and had practiced that 
specialty for over thirty-five years.
3.  
The trial court also wrote “denied M.W.D.” on its docket, but did not enter 
an order on the motion to withdraw.
4.  
Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex. 1995); Harwell 
v. State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).
5.  
Tex. R. Civ. P. 166a(c); S.W. 
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston 
v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).
6.  
S.W. Elec. Power Co., 73 S.W.3d at 215; Rhone-Poulenc, Inc. v. Steel, 997 
S.W.2d 217, 223 (Tex. 1999); Great Am. Reserve Ins. Co. v. San Antonio 
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).
7.  
Great Am., 391 S.W.2d at 47.
8.  
Rhone-Poulenc, 997 S.W.2d at 223; Harwell, 896 S.W.2d at 173.
9.  
Great Am., 391 S.W.2d at 47.
10.  
Campbell v. Hart, 256 S.W.2d 255, 260-61 (Tex. Civ. App.—Fort Worth 
1953, writ ref’d n.r.e.).
11.  
Tex. Disciplinary R. Prof’l Conduct 
1.04(a), reprinted in Tex. Gov’t 
Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9).
12.  
Tex. Disciplinary R. Prof’l Conduct 
1.04(b).
13.  
The Frenches cite no legal authority, and we are aware of none, for the 
proposition that an attempt to collect a fee may be deemed unconscionable or a 
breach of fiduciary duty, and thus a defense to payment, under facts such as 
those in this case.
14.  
Further, LOWT points out the Texas law allows attorneys to collect their full 
contingent fee when the client terminates the contract without good cause.  
See Mandell & Wright v. Thomas, 441 S.W.2d 841, 847 (Tex. 
1969).  As we discuss herein, there is a fact issue concerning whether the 
Frenches terminated the fee agreements without cause.
15.  
See Tex. Disciplinary R. Prof’l 
Conduct 1.15 cmt. 4.
16.  
441 S.W.2d at 847.
17.  
See id.
18.  
See Howell v. Kelly, 534 S.W.2d 737, 739-40 (Tex. Civ. App.—Houston [1st 
Dist.] 1976, no writ); see also Staples v. McKnight, 763 S.W.2d 914, 916 
& n.1 (Tex. App.—Dallas 1988, writ denied) (holding that whether attorney 
had just cause to withdraw from representing client depends on facts and 
circumstances of case).
19.  
See Rhone-Poulenc, 997 S.W.2d at 223; Clear Creek Basin, 589 
S.W.2d at 678.
20.  
Having concluded that none of the grounds alleged by the Frenches in their 
motion for summary judgment support summary judgment, we do not reach LOWT’s 
complaints under its first issue regarding the lack of notice of the summary 
judgment hearing and the alleged defects in the Frenches’ summary judgment 
evidence, including the affidavit of James McCormack.  For the same reason, 
we also do not address LOWT’s second and third issues regarding attorney’s 
fees.  See Tex. R. App. P. 
47.1.
21.  
See First Alief Bank v. White, 682 S.W.2d 251, 252 (Tex. 1984); Comal 
County Rural High Sch. Dist. No. 705 v. Nelson, 158 Tex. 564, 314 S.W.2d 
956, 957 (1958).
22.  
See Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 
(Tex. 1993).
23.  
Tex. R. Civ. P. 301.
24.  
Lamb v. Franklin, 976 S.W.2d 339, 343 (Tex. App.—Amarillo 1998, no 
pet.).
25.  
Id.; see Tex. R. Civ. P. 
301.
26.  
Lamb, 976 S.W.2d at 343.