Affirmed and Opinion filed November 16, 2010.



 



 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00759-CV



 

Michael Enright, Appellant

V.

GOODMAN DISTRIBUTION, INC., Appellee

 



On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2006-71627



 

OPINION

 

This negligence suit arises from an accident in which
Michael Enright, an employee of Randall’s Refrigeration, was struck by an
air-conditioning condenser unit while it was being loaded onto a trailer at a
facility controlled by Goodman Distribution, Inc.  The district court signed a
judgment in conformity with the jury’s verdict, and Enright appeals.  We affirm.[1]

BACKGROUND

Enright worked as a driver transporting equipment for
Randall’s Refrigeration.  On September 1, 2005, Enright was assisting as Goodman
Distribution forklift operator David Gonzalez transferred equipment onto a
“low-boy” trailer from a loading dock.  The trailer was lower than the loading
dock.  Enright was standing on the trailer as the forklift lowered a large air-conditioning
condenser unit to the trailer from the loading dock.  During the transfer
process, Gonzalez tilted the loaded forks downward; the condenser unit slipped from
the forks onto the trailer and hit Enright’s lower back and right leg.  Enright
subsequently sued Goodman Distribution in connection with this September 2005 accident,
contending that Goodman Distribution acted negligently and injured him.

In a 10-2 verdict, the jury found that Enright and
Goodman Distribution both were negligent; it attributed 50 percent of the
injury-causing negligence to Enright and 50 percent to Goodman Distribution.  When
asked what sum of money would fairly and reasonably compensate Enright for his
injuries that resulted from the 2005 accident, the jury awarded $15,199 in expenses
for past medical care.  The jury awarded zero damages for (1) future medical
care, and (2) past and future physical pain, value of lost earning capacity,
disfigurement, physical impairment, and loss of household services.  The trial
court signed a final judgment in conformity with the jury verdict.  

Enright filed a motion for new trial in which he
contended the evidence was factually insufficient to support (1) the jury
finding that attributed 50 percent of the injury-causing negligence to Enright;
(2) the jury’s zero damage finding for all claims other than expenses for past
medical care; and (3) the jury’s finding of $15,199 in damages for past medical
expenses.  The trial court granted his motion.  Goodman Distribution then filed
a motion to reconsider the order granting a new trial, which the trial court granted. 
The trial court signed an order vacating its prior order granting a new trial and
denied Enright’s motion for new trial.  Enright timely appealed.[2] 


ANALYSIS

On appeal, Enright argues that the evidence is
factually insufficient to support the jury’s finding that attributes 50 percent
of the injury-causing negligence to Enright; he claims that he could not be
responsible for the accident because he was not facing the forklift when the
unit slipped from the forks and hit him.  Enright also challenges the jury’s zero
damage findings for past physical pain, past and future disfigurement, and past
and future physical impairment; he claims that the zero damage findings
contradict the jury’s finding of injury and award of $15,199 for past medical expenses. 
Enright argues that the $15,199 damage award is against the great weight and
preponderance of the evidence, and that he is entitled to $106,927.52 for past
medical expenses.  Enright requests that we reverse and remand for new trial.[3]

We generally review a trial court’s failure to grant
a motion for new trial for an abuse of discretion. Novosad v. Cunningham,
38 S.W.3d 767, 770 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  However, when
the motion for new trial is based on a challenge to the sufficiency of the
evidence supporting the verdict, we apply the appropriate sufficiency standard
to evaluate the trial court’s denial of the motion.  Mandell v. Hamman Oil
& Ref. Co., 822 S.W.2d 153, 158 (Tex. App.—Houston [1st Dist.] 1991,
writ denied), abrogated on other grounds by Coastal Oil & Gas
Corp. v. Garza Energy Trust, 268 S.W.3d 1 (Tex. 2008).  

In reviewing Enright’s factual sufficiency challenges,
we consider and weigh all of the evidence.  Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001).  In reviewing challenges on issues for which Enright
bore the burden of proof, we will set aside the verdict only if it is so contrary
to the great weight and preponderance of the evidence as to be clearly wrong
and unjust.  Id.; see also Golden Eagle Archery, Inc. v. Jackson,
111 S.W.3d 757, 773 (Tex. 2003).  On an issue for which Goodman Distribution
had the burden of proof, we will set aside the verdict only if the evidence is
so weak as to render the adverse finding clearly wrong and unjust.  Dow
Chem. Co., 46 S.W.3d at 242.

I.         Enright’s
Negligence 

Enright claims the evidence is factually insufficient
to support the jury finding that attributes 50 percent of the injury-causing
negligence to him.  At trial, Goodman Distribution bore the burden of proof to
establish the fact of Enright’s negligence and the percentage of comparative
responsibility attributable to Enright.  See, e.g., McDonald v.
Dankworth, 212 S.W.3d 336, 340 (Tex. App.—Austin 2006, no pet.). 

Enright testified that his employer trained him on
methods for loading a “low-boy” trailer that is not level with a loading dock. 
Enright testified that not all drivers assist in the loading process, and that
drivers sometimes ask laborers to do the loading.  Goodman Distribution’s branch
manager, Michael Buttafuoco, and its forklift operator, Gonzalez, both testified
that Enright pulled up to the loading dock and voluntarily chose to participate
in the loading process.  

Gonzalez testified that the procedure of slightly
tilting the forks to allow the load to be pulled onto the trailer was common
and had not previously caused the equipment to slide unexpectedly.  On the day
of the accident, this procedure had been used three times to place equipment on
Enright’s trailer without incident.  Gonzalez thought it was safe to lower the
fourth unit and slightly tilt the loaded forks downward even though Enright was
turned sideways and was not directly facing the forklift.  Gonzalez testified
that the condenser unit slipped off the forks, touched down on the trailer, and
hit Enright’s hip.  Enright’s liability expert Raymond Skinner testified that
anyone with forklift training would recognize the potential risk of employing a
loading method in which the loaded forks of a forklift are tilted downward.  

On appeal, Enright argues that he could not have been
negligent because his back was to the forklift when Gonzalez tilted the forks
and the condenser unit slipped.  Enright testified that he and Gonzalez loaded
three air-conditioning units onto the trailer without incident using eye
contact and hand signals.  Enright and Gonzalez both testified that when Gonzalez
lowered the fourth unit to the trailer, Gonzalez tilted the forks without
waiting for Enright to directly face the forklift and give a signal.

After considering all the evidence, we conclude that the
jury’s attribution of 50 percent of the injury-causing negligence to Enright is
supported by factually sufficient evidence.  The jury heard evidence that
Enright voluntarily and repeatedly stood in the trailer and assisted Gonzalez despite
the danger posed by tilting the forklift load downward toward the “low-boy”
trailer.  On this record, the evidence is not so weak as to render the jury’s
apportionment unfair or unjust.  See Dow Chem. Co., 46 S.W.3d at 242.

We overrule Enright’s issue challenging the factual
sufficiency of the evidence supporting the jury finding attributing 50 percent
of the injury-causing negligence to Enright.

II.        Zero Damage Finding
for Past Physical Pain

Enright argues that the jury’s zero damage finding
for past physical pain is against the great weight and preponderance of the
evidence because there is uncontroverted evidence of an objective injury. 

The presence or absence of pain is an inherently
subjective question for which the plaintiff bears the burden of production and
persuasion.  Dollison v. Hayes, 79 S.W.3d 246, 249–51 (Tex.
App.—Texarkana 2002, no pet.).  Some objective injuries are so significant that
an award of damages for physical pain is mandated.  See, e.g., Hammett
v. Zimmerman, 804 S.W.2d 663, 668–69 (Tex. App.—Fort Worth 1991, no writ) (reversing
zero damage finding for pain and suffering associated with listing of the
lumbar spine and declination of the sacral base plane; upholding zero damage
finding for pain and suffering associated with restricted range of motion,
tightness, and tenderness); Russell v. Hankerson, 771 S.W.2d 650, 652–53
(Tex. App.—Corpus Christi 1989, writ denied) (reversing zero damage finding for
pain and suffering associated with severely swollen and discolored foot); Porter
v. Gen. Tel. Co. of the Sw., 736 S.W.2d 204, 205 (Tex. App.—Corpus Christi
1987, no writ) (reversing zero damage finding for pain and suffering because
jury awarded medical expenses and mental anguish associated with laceration
from car accident); see also Golden Eagle Archery, Inc., 116 S.W.3d at
774–75 (noting in dicta that zero pain and suffering damage findings should not
be upheld on appeal if “there is objective, undisputed evidence of a
significant injury and the jury could not have compensated the injured party in
some other category of damages”).  Examples of serious, objective injuries that
will support an award of damages for subjective complaints of pain include bone
fractures, severe burns, and lacerations.  See Hammett, 804 S.W.2d at 666.

However, a damage award for physical pain is not
always mandated when medical expenses are awarded.  With respect to an undisputed
injury that is less serious and accompanied only by subjective complaints of
pain, a jury reasonably may believe that the injured party should be
compensated “for seeking enough medical care to ensure that [the] injury was
not serious” yet nonetheless conclude “that [the injured party] never suffered
pain warranting a money award.”  Blizzard v. Nationwide Mut. Fire Ins. Co.,
756 S.W.2d 801, 805 (Tex. App.—Dallas 1998, no writ); see also McGuffin v.
Terrell, 732 S.W.2d 425, 428 (Tex. App.—Fort Worth 1987, no writ) (“[E]vidently
the jury found appellant’s injury so minimal as to not warrant an award for
past pain and suffering” despite the jury’s award of medical expenses for
treatment of the muscle spasms.); Chadbourne v. Cook, No.
05-99-00353-CV, 2000 WL 156955, at *2 (Tex. App.—Dallas Feb. 15, 2000, no pet.)
(not designated for publication) (“[T]he jury could reasonably conclude any
pain and suffering Jack endured was too negligible to warrant monetary
compensation” despite the jury’s award of medical expenses for treatment of his
nose injury.). 

Additionally, when the jury hears conflicting
evidence regarding the injury’s cause or an alternative explanation for the
injured party’s reported pain, courts have upheld zero damage findings for physical
pain despite the jury’s finding that the injured party is entitled to damages
for medical expenses.  See, e.g., Gainsco County Mut. Ins. Co. v.
Martinez, 27 S.W.3d 97, 103–04 (Tex. App.—San Antonio 2000, pet. dism’d)
(upholding zero damage finding for pain and suffering despite award for medical
expenses; jury heard evidence that plaintiff was a malingerer with pre-existing
back injuries); Lamb v. Franklin, 976 S.W.2d 339, 342–43 (Tex.
App.—Amarillo 1998, no pet.) (upholding zero damage finding for pain and
suffering despite award for medical expenses; jury heard evidence of
alternative causes for soft tissue injury and evidence that plaintiff was
“either faking or exaggerating her complaints for financial or other gain”); Hyler
v. Boytor, 823 S.W.2d 425, 427 (Tex. App.—Houston [1st Dist.] 1992, no
writ) (upholding zero damage finding for pain and suffering despite award for
medical expenses; jury heard evidence of alternative causes for plaintiff’s
lumbar sprain and spinal injury); see also Jimenez v. Rodriguez, No.
01-98-00293-CV, 1999 WL 213096, at *7 (Tex. App.—Houston [1st Dist.] Apr. 15,
1999, pet. denied) (not designated for publication) (upholding zero damage
finding for pain and suffering despite award for medical expenses; jury heard
evidence that plaintiff’s complaints were motivated by secondary gain). 

It follows that the fact of injury does not conclusively
establish compensable physical pain in all circumstances.  Dollison, 79
S.W.3d at 253; Blizzard, 756 S.W.2d at 805.  Based on this record and
the governing legal framework, we must examine whether the jury’s finding of
zero damages for past physical pain is against the great weight and
preponderance of the evidence.  See Dow Chem. Co., 46 S.W.3d at 242.

A.        Evidence
of Pain from Long-Term Injury and Surgery

We first address whether the jury’s finding of zero
damages for past physical pain contravenes the overwhelming weight of the evidence
in light of Enright’s contention that the 2005 accident caused painful long-term
back problems and necessitated surgery in 2008.  

Enright informed his employer of the 2005 accident the
day it occurred and was taken to Methodist Willowbrook Hospital to be
examined.  Enright’s medical records from that examination note complaints of
pain in his lower right back.  Willowbrook performed several tests and diagnosed
Enright as having a “back contusion.”  Willowbrook administered morphine to
Enright and prescribed Vicodin.  Enright visited KSF Orthopaedic Center the
following day, where he complained of lower back pain and pain radiating down
his right leg.  KSF noted a limited range of lumbar motion with an area of mild
soft tissue swelling and “one very small 0.5 cm area of blue discoloration.” 
KSF prescribed Naproxen.  

Following these two examinations, Enright visited a
number of doctors throughout the next three years including: (1) a pain
specialist, Dr. Bass; (2) a neurosurgeon, Dr. Torres; (3) an orthopedic surgeon,
Dr. Cupic; and (4) another orthopedic surgeon, Dr. Pribil.  Drs. Torres, Cupic,
and Pribil each recommended surgery to resolve Enright’s reported back
problems.  Enright testified that he first visited Dr. Cupic on the
recommendation of his attorneys, and Dr. Cupic referred Enright to Dr. Pribil. 
Dr. Pribil performed surgery on Enright’s back in May 2008.  

Enright testified: 

It — the pain is still constantly [sic], but I have good
days and I had bad days.

                        *                                  *                                  *          

[B]efore September the 1st of 2005 the pain would come and
go, be off and on.  And then as of 2005 the pain did not go away.  It was
constant and, as a matter of fact, it got more intense in my legs and my back. 
It was pretty bad.

                        *                                  *                                  *          

I would have good days and bad days at times; but when the
pain was at its worse [sic], yes, I needed that surgery.  And I am glad because
my legs are a lot better.

                        *                                  *                                  *          

I was in a lot of pain.  When
you are in a lot of pain, you want to get relief.  I felt like [the surgery]
was the best way for me to get relief because the medication wasn’t helping all
that much.  The pain was too big.

Enright claims that the 2005 accident
necessitated this follow-up treatment and surgery, and that he suffered
compensable physical pain as a result.

Gonzalez testified that Enright “looked back and he
pushed . . . the unit away” after it came into contact with him on the day of
the accident.  Gonzalez testified that Enright did not inform Gonzalez that he
was in pain, and that Enright did not cry out in pain, grab his back, or fall
over.  Gonzalez testified that Enright initially declined to report the
accident and went on with the loading process; after loading the rest of the
units, Enright changed his mind and decided to report the accident.  After
making the report, Enright declined Goodman Distribution’s offer to transport
him to the hospital, and he took his truck to make several bank deposits and transport
the equipment in the truck to his employer.  When Enright did seek medical
attention, neither Willowbrook nor KSF identified any fractures or other injury
to Enright’s back other than a bruise.

The record shows that Enright was involved in at
least fourteen documented accidents before 2005, all of which resulted in
medical attention at various hospitals for low back and related leg pain; four
of these incidents occurred during the three months preceding the 2005 accident. 
Enright’s medical records also show that Enright suffered from a degenerative,
arthritic back condition that existed as early as 1992, and he had a long
history of disk bulges and herniations.  Goodman Distribution’s medical expert,
orthopedic surgeon Dr. Grieder, reviewed all of Enright’s medical records from
1992 to 2008 and opined that any bulges and herniations requiring surgery could
have been caused by these long-term conditions.  Dr. Grieder also testified
that the specific surgery performed by Dr. Pribil could not have explained Enright’s
report that his right-leg pain, which Enright attributes to the 2005 accident,
disappeared after the surgery.  The jury heard deposition testimony from Dr.
Bass that echoed both of these opinions.  Dr. Grieder also testified:

Q: Other than the bruise that you just told us about, was
there any other objective evidence of any trauma to [Enright’s] back [after
September 1, 2005]?

A: None that I’m aware of.

                        *                                  *                                  *          

Q: And what is the significance of that consistency of no
evidence of trauma over that two-year period [following September 1, 2005]?

A: Well, I think that it reinforces the concept that there
was — other than this bruise, there was no identifiable objective injury of
this gentleman.

                        *                                  *                                  *          

Q: Was there any medical justification for the operation
that Dr. Pribil performed [on Enright’s back in 2008]?

A: None.

                        *                                  *                                  *          

Q: If we can go back to September 1, 2005, after he goes to
Methodist Willowbrook Hospital, he was diagnosed with a bruise with no evidence
of any other trauma, as a board certified orthopedic surgeon what medical treatment
do you think would have been reasonable and necessary to treat that condition?

A: Well, I am not aware of any medical — once he left the
emergency room, I am not aware of any medical treatment other than what is
termed the “tenure of time” that is going to resolve that problem.

                        *                                  *                                  *          

A: My opinion is twofold. 
[Enright’s] diagnosis is a contusion in the back.  And No. 2, there was no
medical objective injury that any of the degenerative conditions in his spine
have been changed or worsened.

It was uniquely within the province of the jury to assess
the conflicting testimony regarding whether the 2005 accident caused Enright’s
long-term back problems or necessitated surgery in 2008.  See Golden
Eagle Archery, 116 S.W.3d at 761 (“[T]he jury is the sole judge of the
credibility of witnesses and the weight to be given to their testimony.”).  Based
on the evidence outlined above, the jury was entitled to conclude that the 2005
accident did not cause Enright’s back problems, aggravate them, or necessitate
surgery.  Accordingly, the fact that Enright underwent back surgery does not
make the jury finding of zero damages for past physical pain in connection with
the 2005 accident contrary to the overwhelming weight of the evidence.  See
Dow Chem. Co., 46 S.W.3d at 242.

B.        Evidence of Subjective Pain from Bruise 

Even if we assume for the sake of argument that
Enright’s bruise from the 2005 accident constituted an objective injury, “the
mere fact of injury [alone] does not prove compensable pain and suffering.”  Blizzard,
756 S.W.2d at 805; see also Chadbourne, 2000 WL 156955, at *2.  Notwithstanding
that the jury awarded $15,199 for past medical expenses, the record before this
court amply supports the jury’s zero damage finding for past physical pain.   

Enright testified that when the condenser unit struck
him he told Gonzalez, “[It] kind of hurts here. . . .  This is hurting pretty
bad.”  Enright’s report to Goodman Distribution on the day of the accident states
that he was experiencing back pain.  Enright’s medical records note his report
of pain on the day of the accident and the following day; Enright was
prescribed pain medication for the bruise diagnosed at Willowbrook and KSF.  

Dr. Grieder testified that Enright is a malingerer with
a “compensation neurosis.”  Dr. Grieder testified that a “malingerer” is as “a
person [who] intentionally provides a story of an illness [ ] without any objective
information to confirm it.”  He also testified that an individual suffers from
“compensation neurosis” when that individual has “complaints or symptoms
without an obvious anatomic explanation, no objective injury to back it up, and
[an interest in] secondary gain that [has] the tendency to prolong these symptoms.” 


Dr. Grieder testified that he formed his conclusion
about Enright’s malingering and compensation neurosis by thoroughly reviewing
all of Enright’s medical records, which reveal that Enright (1) gave
conflicting explanations to treating physicians for his injuries over the
years; (2) purposely withheld information from treating physicians about prior
accidents or injuries; (3) complained of persistent back pain in some instances
yet completely failed to mention back pain when he subsequently sought
treatment for other issues; (4) complained of injuries allegedly sustained at
work that had no anatomic basis; and (5) waited at least two years after the
2005 accident before deciding to undergo surgery.  Dr. Cupic disagreed with Dr.
Greider’s conclusion that Enright is a malingerer who has compensation
neurosis; Dr. Greider acknowledged that no other physician affirmatively characterized
Enright in this manner.  Dr. Greider attributed this difference of opinion to
the fact that (1) none of Enright’s treating physicians had the benefit of
reviewing all of Enright’s medical records; and (2) Enright did not always
disclose his full patient history to his physicians.

The jury also heard evidence that Enright’s admitted narcotics
addiction led him to engage in drug-seeking behavior by visiting different
hospitals and complaining of pain.  Dr. Grieder testified that Enright’s
pattern of visiting new and different emergency rooms suggests that Enright was
trying to prevent detection of his addiction.  

Enright testified that he stopped seeing his primary care
and pain specialist physician, Dr. Bass, because Enright did not want to
participate in the biofeedback program that Dr. Bass recommended as an
alternative to surgery.  The jury heard deposition testimony from Dr. Bass, who
stated that he became concerned about Enright’s “over-reliance” on medication. 
Dr. Bass testified that after he stopped treating him, Enright’s narcotic withdrawal
symptoms prompted Enright’s wife to call Dr. Bass and request assistance.  Dr.
Bass reminded Mrs. Enright that he “would not be prescribing any medications
for [Enright] because of noncompliance,” and Dr. Bass suggested that Enright
visit an emergency room if his pain intensified.  At that point, Dr. Bass
testified that Mrs. Enright hung up on him.  Enright testified that this was
not the only time he had experienced symptoms from narcotic withdrawal.

Evidence that subjective pain complaints are
motivated by interests other than obtaining treatment for legitimate injuries will
support a jury’s decision to award zero damages for physical pain.  See,
e.g., Gainsco County Mut. Ins. Co., 27 S.W.3d at 103; Lamb,
976 S.W.2d at 342; Hyler, 823 S.W.2d at 427; see also Jimenez,
1999 WL 213096, at *7.  The jury could have concluded on this record that any
pain Enright reported in connection with the bruise he sustained from the 2005 accident
was not compensable either because it was too slight, or because the report was
motivated by drug-seeking behavior and secondary gain.  Accordingly, the jury’s
finding of zero damages for past physical pain was not against the great weight
and preponderance of the evidence.  See Dow Chem. Co., 46 S.W.3d at 242.

We overrule Enright’s issue regarding the jury’s zero
damage finding for past physical pain.

III.      Damages for
Disfigurement and Physical Impairment

Enright complains that the jury’s finding of zero
damages for past and future disfigurement and physical impairment is against
the overwhelming weight of evidence.

Disfigurement has been defined as that which impairs
the appearance of a person, or that which renders one’s appearance unsightly,
misshapen, imperfect, or deformed in some manner.  Figueroa v. Davis, 318
S.W.3d 53, 64 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  Enright does not
identify and we cannot locate any place in the record where he presented
evidence to the jury showing that he was disfigured by the 2005 accident,
either as a result of the 0.5 cm bruise on his lower back or from any other
injury.  See Tex. R. App. P. 38.1(i).  Therefore, we conclude that the
jury’s zero damage finding for disfigurement was not against the great weight and
preponderance of the evidence.  See Dow Chem. Co., 46 S.W.3d at 242.

Physical impairment damages compensate for the loss
of the injured party’s former lifestyle.  Patlyek v. Brittain, 149
S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied).  It can encompass both
economic and non-economic losses, and can include hedonic damages, or “loss of
enjoyment of life.”  Id. (citing Golden Eagle Archery, 116 S.W.3d
at 764–65, 772).  To recover damages for physical impairment, Enright must have
proven by a preponderance of the evidence that (1) he incurred injuries that
are distinct from, or extend beyond, injuries compensable through other damage
elements; and (2) these distinct injuries have had a “substantial” effect.  Id.
at 786.

Enright’s testimony constitutes the only evidence in
this record that he suffered physical impairment as a result of the 2005 accident:

Q: Now, Mr. Enright, are there some things that you enjoyed
doing before September the 1st, 2005, that you can’t do now as a result of your
injuries?

A: Yes.  I liked to, if I
could, to hunt.  I like shooting basketball with my kids when I could.  I like
throwing the softball around with them when I could.  I like working — fixing
on the car, running the vacuum for my wife.  You know, just general things in
nature.  Going on road trips in the truck.  We used to love to travel out in
East Texas, up in the Hill Country.

When Enright was
cross-examined, he testified that his pre-2005 health problems also limited his
ability to engage in some of these activities.  According to medical records
from his visit to KSF in 2005, Enright failed to identify these physical
activities when asked to describe any type of exercise in which he
participated.  As discussed above, the jury heard extensive evidence attributing
Enright’s back problems to other pre-existing conditions, and attributing his
complaints of pain to secondary gain, drug-seeking behavior, or exaggeration.  Dr.
Grieder testified that Enright suffered no physical impairment as a result of
the 2005 accident.  

The jury was entitled to resolve the conflict in
testimony regarding the effect of the 2005 accident on Enright’s lifestyle.  See
Golden Eagle Archery, 116 S.W.3d at 761.   Based on the controverted testimony
regarding physical impairment, we cannot conclude that the jury’s finding of
zero damages for physical impairment is so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust.  See Dow
Chem. Co., 46 S.W.3d at 242.

We overrule Enright’s issues regarding the jury’s
finding of zero damages for past and future disfigurement and physical
impairment.

IV.      $15,199 for Past
Medical Expenses

Enright argues that the jury’s award of $15,199 in
past medical expenses is arbitrary because it is not based on any evidence. 
Enright seeks compensation for past medical expenses totaling $106,927.52,
which includes the cost of his 2008 back surgery.

We will not disregard a jury’s damage award merely
because the jury’s reasoning in reaching its figures is unclear.  First
State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ
denied).  A jury has discretion to award damages within the range
permitted by the evidence, as long as a rational basis exists for the jury’s
damage calculation.  Id.  A jury may not arbitrarily assess an amount
not authorized or supported by evidence at trial; in other words, a jury may
not “pull figures out of a hat.”  Id.

Enright testified that on the day of the accident he
visited Willowbrook, where he received diagnostic treatment and pain medication
for his bruise.  Enright also testified that pursuant to Willowbrook’s
recommendation, he sought follow-up treatment the next day at KSF.  The jury
heard evidence that some of Enright’s treating physicians after these two
visits recommended further medical treatment and surgery.  

However, as discussed above, Dr. Grieder testified
that the only injury caused by the 2005 accident was the bruise diagnosed by
doctors at Willowbrook and KSF.  Dr. Grieder further testified that the rest of
Enright’s complaints were unrelated to the accident, and that the additional
medical treatments and surgery were medically unnecessary.  

The evidence presented at trial shows that the
charges for the visit to Willowbrook totaled $8,095; the charges for the visit
to KSF totaled $7,199.  The cost of both visits totaled $15,294.  Consistent
with this evidence, the jury awarded $15,199 for past medical expenses.  This
evidence provides a rational basis by which the jury could compensate Enright
for the costs incurred during his initial visits to diagnose the bruise he
sustained as a result of the 2005 accident.  See id.  

We overrule Enright’s issue regarding the jury’s
$15,199 damage award for past medical expenses.

CONCLUSION

Having overruled
all Enright’s issues, we affirm the judgment of the trial court.








                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

Panel consists of Justices Seymore, Brown,
and Boyce.

 









[1]
Enright sued Goodman Appliance Holding Co., Goodman Global, Inc., and Goodman
Distribution, Inc.  Enright filed a notice of partial non-suit to dismiss
without prejudice all claims against Goodman Appliance Holding Co. and Goodman
Global, Inc.  The jury charge submitted questions only as to Goodman
Distribution, Inc., and the final judgment awarded damages only as to Goodman
Distribution, Inc.  Accordingly, we refer to the defendant and appellee as
“Goodman Distribution.”





[2]
The trial court signed a final judgment on April 17, 2009.  Enright filed a
timely motion for new trial on May 18, 2009, and the trial court signed an
order granting the motion for new trial on June 15, 2009, the 59th day after
the judgment was signed.  See Tex. R. Civ. P. 329b(c), (e).  On August 11, 2009,
the trial court signed an order granting Goodman Distribution’s motion to
reconsider and setting aside the June 15 order granting a new trial.  See In
re Baylor Med. Ctr. at Garland, 280 S.W.3d 227, 230–231 (Tex. 2008) (“When
a new trial is granted, the case stands on the trial court’s docket the same as
though no trial had been had.  Accordingly, the trial court should then have
the power to set aside a new trial order any time before a final judgment is
entered.” (quotations omitted)).  The August 11 order granting reconsideration
operated to reinstate the original judgment and constituted an order modifying,
correcting, or reforming the original judgment; therefore, the appellate
timetable began anew on August 11, 2009.  See Old Republic Ins. Co. v. Scott,
846 S.W.2d 832, 833 (Tex. 1993); see also In re Baylor Med. Ctr. at Garland,
280 S.W.3d at 231 (“[I]f a new trial is granted and later withdrawn, the
appellate deadlines run from the later order granting reinstatement rather than
the earlier order.”).  Enright timely filed a notice of appeal on August 27,
2009.  See Tex. R. App. P. 26.1.





[3]
Enright’s issue presented in his brief also refers to legal sufficiency, but
the substance of his briefing addresses only factual sufficiency and he seeks
only a remand for a new trial.  Therefore, we do not address legal sufficiency
in this opinion.