

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00001-CV
_____

ELISHA SALDANA, APPELLANT

V.

LESHAI WILLIAMS, APPELLEE

On Appeal from the County Court at Law Number 3
Lubbock County, Texas
Trial Court No. 2016-572,331; Honorable J. Phillip Hays, Presiding

April 15, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, Elisha Saldana, sued Appellee, Leshai Williams, for injuries ostensibly sustained from a low-speed car crash. After a jury trial in which the jury determined Williams was not negligent, the court entered a take-nothing judgment. Via a single issue, Saldana challenges the jury's verdict, arguing it was against the great weight and preponderance of the evidence so as to be manifestly unjust, that it is shocking to the conscience, and it clearly demonstrates bias. We affirm the judgment of the trial court.

**BACKGROUND**

This suit arose after Saldana and Williams were involved in a low-speed car crash in mid-September 2015, from which Saldana claimed $4,000 in damages to his car and $4,456 in medical bills resulted. The collision occurred around mid-morning, while Saldana was driving home after going to a barber shop for a haircut. He was stopped at a red light, waiting for it to turn green. He testified that as he was sitting there, he "heard a loud noise." He said at first, he felt "like if I blacked out . . . ." After looking around, he realized he had been "pushed" into the intersection about five feet. He backed up and saw the vehicle that had hit him. The driver, Williams, was driving an extended cab pick-up truck. Williams testified she was stopped behind Saldana at the red light. She was speaking with her daughter and saw in her "peripheral" vision that the light had turned green. As a result, she started to proceed. Saldana did not proceed and, consequently, Williams rear-ended him. She told the jury she could not have been moving more than two miles an hour when the vehicles collided.

Saldana inspected the vehicles and noticed that on his, "the lenses on the brake lights were cracked, the bumper was pushed in, and the trunk was lifted slightly." He also noticed "the bottom bumper was pushed in" on Williams's truck. Saldana said that other than his adrenaline pumping and feeling some "tingling," he did not "really feel pain." Williams was uninjured. Both parties were able to drive their vehicles from the site of the crash.

Two days after the crash, Saldana went to the emergency room complaining of lower back pain, ankle pain, and wrist pain. During an examination, a physician observed Saldana was able to walk on his ankle and move his wrist without difficultly. X-rays and

a CT-scan were taken as part of the emergency assessment. The results of both tests were normal. On release, the doctor told Saldana to follow up with his primary care physician if necessary and provided to him a one-week work release. Saldana returned to work after that time.

Saldana went to see his primary care physician about four days after his emergency room visit. His doctor recommended physical therapy. Saldana said the therapy provided some relief from his pain. But, at the conclusion of physical therapy, he went back to his primary care physician and requested an MRI. The results of that test showed "no evidence to suggest recent acute trauma." Rather, the results indicated only "minimal chronic-appearing degenerative change" consistent with Saldana's age of thirty-nine.

Nearly a year later, Saldana presented at the emergency room with chest pain and pressure and complained of some back pain in relation to the chest pain. Nearly two years later, Saldana went to a chiropractor, citing his back pain from the crash with Williams as the reason for his pain. The chiropractor did not review any of the imaging results from Saldana's previous doctor visits, nor did he request additional imaging or testing. Rather, he utilized a treatment plan of rubbing "BioFreeze" on Saldana's back, along with "popping" and massaging Saldana's back. Saldana's pain temporarily subsided.

The chiropractor who treated Saldana testified at trial. He said the MRI showed degenerative changes and arthritis that were consistent with Saldana's age. He also opined that these degenerative changes caused Saldana pain because of the crash.

However, he said, his opinion was largely based on what Saldana told him, i.e., that his back hurt following a car crash.

Another chiropractor testified during Williams's case-in-chief. He told the jury he had reviewed all of Saldana's medical records and saw Saldana had not received any treatment for his back pain after he completed physical therapy until he saw a chiropractor two years later. He also opined that because that chiropractor did not order any imaging or tests, that meant he found Saldana's complaints were minor in nature. Consequently, he concluded there was nothing in Saldana's medical records that showed the crash caused Saldana's back pain.

After hearing the evidence, the jury was asked to determine, "Did the negligence, if any, of Leshai Williams, proximately cause the collision and the injuries of Elisha Saldana?" The jury answered this question, "No." Based on the jury's finding, the trial court entered a take-nothing judgment. This appeal followed.

### ANALYSIS

Through his sole issue on appeal, Saldana challenges the factual sufficiency of the evidence supporting the jury's finding that Williams's negligence did not proximately cause the collision and his injuries.[1] Williams responds that Saldana failed to prove by a preponderance of the evidence that her negligence was the proximate cause of his claimed injury. We must agree.

---

[1] Where there is conflicting evidence on an issue, the appropriate challenge to a jury finding concerning an issue upon which the complaining party had the burden of proof is that the jury's finding is against the great weight and preponderance of the evidence. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 275-76 (Tex. App.—Amarillo December 31, 1988, writ denied).

4

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must "demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (citations omitted). The court of appeals is required to weigh all of the evidence, and can set aside a verdict only if the evidence is "so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); Hall, *Standards of Review in Texas*, 29 St. Mary's L. J. 351, 484 (1998)).

The definitions provided in the charge to the jury relevant to disposition of Saldana's appellate issue are as follows:

> "Negligence" means the failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary Care" means the degree of care that would be exercised by a person of ordinary prudence under the same or similar circumstances.
>
> "Proximate Cause" means a cause that was a substantial factor in bringing about an occurrence, and without which cause such occurrence would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the occurrence, or some similar occurrence, might reasonably result therefrom. There may be more than one proximate cause of an occurrence.

As support for his position that Williams's negligence proximately caused his damages, Saldana relies on the property damage estimate regarding his car, showing $4,000 in damages, the emergency room "no return to work" statement, and documents showing total medical expenses of $4,456, introduced into evidence as Plaintiff's exhibits 2, 2A, 7, 8, 9, and 11. He also points to his own testimony that prior to the crash with

Williams, he had never sustained a back injury or been in a car accident. He focuses on the facts that he received physical therapy for his back pain, went back to his doctor when the pain continued, and had an MRI to determine the cause of his pain. He also said he continued working despite the pain but went to see a chiropractor when the pain would not completely subside. He also notes the testimony of his supervisor at work that after the accident, he noticed Saldana had a stiff neck and had to turn his entire body to look at him. Furthermore, an employee in Human Resources at Saldana's place of employment said that while Saldana had a desk job, he usually filmed football games on Friday night. He was, however, unable to do so in September, October, and November of 2015. Finally, Saldana asserts as support for his position, Williams's admission that she caused the accident, that it was preventable, and that her acts or omissions were a proximate cause of the crash.

Williams argues on appeal that Saldana failed to prove by a preponderance of the evidence that the crash proximately caused the damages he seeks. In support of her position, she first acknowledges her admission that she rolled into the back of Saldana's car at a very slow speed of one to two miles per hour. She was not injured, and Saldana did not complain of any injury at the time of the crash. Damage to the vehicles was minor and both were able to be driven. Williams also notes the only evidence of Saldana's pain comes from his subjective complaints.[2] He did not provide any objective evidence of a back injury and in fact, the only objective evidence, the x-rays and MRI, showed no acute

---

[2] Williams also points to Saldana's other medical issues including diabetes, hypertension, chest pain, morbid obesity, and age-related arthritis in his back as the potential cause of his back pain.

injury. Williams's expert, a chiropractor, testified he did not see anything in Saldana's medical records to support a diagnosis of a back injury caused by the crash.

Williams also notes conflicting evidence in the record from which the jury could have determined Saldana was not credible. First, she points to Saldana's testimony that he felt like he "blacked out" at the time of the crash. But, medical records from the emergency room two days later indicate Saldana did not lose consciousness. Second, Williams points to Saldana's testimony that a year after the crash, he went to the emergency room with back pain radiating to his chest. The medical records from that episode indicate he presented with chest pain and pressure, along with radiation to the side of his chest. We note the record also states Saldana reported "mid to upper" back pain in conjunction with the onset of chest pain. Third, Williams says the chiropractor who treated Saldana testified the MRI showed only degenerative changes and arthritis consistent with Saldana's age. He said that, in his opinion, those degenerative changes caused pain because of the crash. The chiropractor also admitted that because the only information regarding pain comes from the patient, it is possible for a patient to claim the pain is from an accident when it is actually due to arthritis. Williams further points to the chiropractor's testimony that it is possible to have a patient with degenerative changes with no history of a car crash present with the exact symptoms as those presumably suffered by Saldana.

Lastly, Williams notes the testimony of her expert. She says he controverted the testimony of Saldana's chiropractor when he testified it was not reasonable that the pain Saldana complained of was due to the car accident two years prior. He said, "people who have significant, ongoing pain related to a specific incident are going to go get treatment

7

and not wait for two years to do some other kind of treatment if the first treatment hasn't been effective. So, he may have had some pain that warranted treatment, but not—not due to something two years earlier." Williams concludes that because the medical records show Saldana had degenerative changes consistent with his age, the jury could have reasonably concluded the crash was not the "but for" cause of Saldana's pain.

When presented with conflicting evidence on an issue, it is within the province of the jury to resolve those conflicts and decide those factual issues. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819-20 (Tex. 2005); *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003) (noting the "familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony"); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986) (jury can choose to believe one witness over other witnesses or resolve inconsistencies in their testimony when presented with conflicting evidence). The appellate court may not substitute its own judgment for the jury's, even in the event it would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Lamb v. Franklin*, 976 S.W.2d 339, 341 (Tex. App.—Amarillo 1998, no pet).

Here, given the testimony and evidence before it, the jury could have reasonably concluded that while Williams's negligence was the proximate cause of the crash, the crash was not the proximate cause of Saldana's claimed injuries. Consequently, based on our review of the evidence under the applicable standard of review, we find the evidence was factually sufficient to support the jury's finding. As a result, we resolve Saldana's sole issue against him. Issue one is overruled.

**CONCLUSION**

Having overruled Saldana's sole appellate issue, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice